91 N.J. Super. 377 (1966)
220 A.2d 693
DONALD MYERS, INDIVIDUALLY AND AS GUARDIAN AD LITEM OF JO ANN MYERS, AN INFANT, PLAINTIFF-RESPONDENT,
v.
ST. FRANCIS HOSPITAL, A NEW JERSEY CORPORATION, DEFENDANT, AND DR. ALPHONSE PALMIERI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1965.
Decided June 3, 1966.
*383 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. John G. Rathman argued the cause for appellant (Messrs. Jung, Selikoff & Rathman, attorneys).
Mr. Arthur Kimmel argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant Dr. Palmieri appeals, pursuant to leave granted, from a Law Division interlocutory order directing him to answer 108 of the 109 interrogatories served upon him.
This is a medical malpractice, personal injury action brought by plaintiff, individually and as guardian ad litem of Jo Ann Myers, an infant, seeking damages for personal injuries and consequential expenses allegedly sustained as a result of a blood exchange transfusion (a simultaneous withdrawal of the recipient's blood and transfusion with that of the donor.)
The first count of the complaint charges defendant St. Francis Hospital with negligence, and is not involved on this appeal. Counts 2 through 5 are directed at defendant doctor. The second count charges that he negligently, by his own *384 acts and/or the acts of personnel under his care and responsibility, used certain hot water bottles in such manner as to burn the buttocks of the infant. The third count is to the same effect, except that the doctor is described as an "attending or treating physician." The fourth count is more specific in charging negligence in the performance of an exchange transfusion. The fifth count contains the additional allegation that the doctor held himself out as a specialist in the treatment of infant children and possessed of a special degree of skill.
Dr. Palmieri's answer denied negligence, alleged that the incident was due to the negligent acts of third persons and, further, that it was the result of the sole negligence of the hospital, its agents, servants or employees. He cross-claimed for contribution from the hospital under the Joint Tortfeasors Act.
Plaintiff, by way of discovery, served Dr. Palmieri with interrogatories. He moved to strike them for failure to comply with the rules of court and as oppressive. Plaintiff counter-moved that he be ordered to answer them. Following oral argument the trial judge ordered defendant to answer all but one, which was stricken. Dr. Palmieri's motion for leave to appeal pursuant to R.R. 2:2-3 (a) followed.
We are again asked to determine the scope of permissible pretrial discovery by a plaintiff against a defendant physician in a medical malpractice action. We recently dealt with that question at some length in Rogotzki v. Schept, 91 N.J. Super. 135 (1966), where, among other things, we held that a defendant doctor in such an action must answer on oral deposition questions directed not only to what he saw and did at the time he treated the patient (operations were involved) but medical opinions formed at that time.
R.R. 4:23-9, dealing with the scope of interrogatories, provides that they may relate "to any matters which can be inquired into under Rule 4:16-2." R.R. 4:16-2, relating to the scope of examination on depositions, states:
*385 "Unless otherwise ordered by the court as provided by Rule 4:20-2 or 4:20-4, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be admissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. Nor is it ground for objection that the examining party has knowledge of the matters as to which testimony is sought. * * *"
R.R. 4:20-2, "Orders for the Protection of Parties and Deponents," provides that the court, upon notice and for good cause shown, may order that the deposition not be taken or limit the scope of the examination; the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment or oppression. The other rule referred to, R.R. 4:20-4, "Motion to Terminate or Limit Examination," provides that at any time during the taking of a deposition, on motion of any party or of the deponent and upon a showing that the examination is being conducted in a manner so as unreasonably to annoy, embarrass or oppress, the court may order the examination to cease forthwith, or limit its scope and manner.
The discovery rules are to be construed liberally, for the search for truth in aid of justice is paramount. Concealment and surprise are not to be tolerated in a modern judicial system. Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338 (1951). As we said in Interchemical Corp. v. Uncas Printing & Finishing Co., Inc., 39 N.J. Super. 318, 325 (1956), the broadest possible latitude should be accorded pretrial discovery.
In Rogotzki we again stressed that R.R. 4:16-2 was specifically designed to encourage full pretrial discovery of all matters not privileged or specifically excepted from the operation of the rule (such as the work product of an attorney) which are relevant or may lead to relevant evidence concerning *386 the respective positions of the parties. Like the other discovery rules, it is designed to afford litigants every possible avenue of inquiry before trial in order that justice might be achieved. It is no ground for objection  and R.R. 4:16-2 so specifically provides  that the answers given on discovery will not be admissible at the trial "if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."
The question of relevance in the setting of discovery has received limited attention by our courts. Broadly stated, the test of relevance may best be summarized as, "Is the propounded question useful?" Relevance is basically a case-by-case proposition. 74 Harv. L. Rev. 940, 1008 (1961).
Defendant's attack upon the interrogatories is contained under four points of his brief, and we shall deal with the questions so grouped in the order of his presentation.

I.
Defendant submits that the following interrogatories are irrelevant:
6 through 8, inquiring as to his profession and license.
9 through 12, his education and internship.
13 through 18, his specialization and training and experience therein.
19 through 23, his certification by boards.
24, his hospital connections.
25 through 28, as to teaching in medical institutions.
29. membership in medical societies.
30 and 31, his writings in the field of pediatrics.
32, 33 and 72, the number of occasions he treated conditions similar to infant plaintiff's, inducing him to perform an exchange transfusion, and the name, address, date and factual account of every patient for whom he performed an exchange transfusion in the preceding two years.
83, the particular condition or conditions for which the baby was then being treated, and by whom.
85, anticipated expenditures for treatment of the alleged injuries.
92 and 93, whether the infant is still his patient, and his present treatment of her.
99 and 100, what would be entailed in performing plastic surgery to remove the scars and, if skin grafts would be involved, describing them.

*387 102 and 105, as to books defendant has in his working library dealing with exchange transfusions in infants, and as to such books in the hospital library.
It should be observed, initially, that although R.R. 4:16-2 authorizes discovery of matters "relevant to the subject matter involved in the pending action," it does not limit the inquiry to matters relevant to the issues of the case. One of the matters "relevant to the subject matter," as distinguished from the issues, may well be defendant's credibility. See Strecker v. Devine, 11 N.J. Super. 272, 275 (Law Div. 1951). N.J.S. 2A:84A-3 defines "relevant evidence" as meaning evidence "having any tendency in reason to prove any material fact." A doctor's training, experience and medical competency in treating conditions similar to those for which he treated the infant plaintiff have a "tendency in reason to prove" that he may not have had the qualifications or experience to perform the blood exchange transfusion. In every malpractice action defendant's possession of the required knowledge and skill ordinarily possessed and exercised in similar situations by the member of the profession practicing in his field is clearly in issue under substantive law and the pleadings. 1 Wigmore on Evidence (3d ed. 1940), § 67, p. 487; and cf. Schueler v. Strelinger, 43 N.J. 330, 344 (1964).
Defendant will undoubtedly take the witness stand and testify that the acts he performed were entirely necessary and proper. Plaintiff is entitled to have defendant answer interrogatories Nos. 6 through 33 and 72 so that he may be in a position to cross-examine the doctor with respect to his qualifications and experience. These interrogatories are especially relevant with regard to the fifth count, charging defendant with holding himself out as a specialist in the treatment of infant children. They are also relevant as to the other counts.
Defendant's contention that they are irrelevant because they seem more like an attempt to qualify him as an expert is without merit. So, too, as to his claim that the questions *388 are improper because New Jersey law prohibits one from calling an adverse party as his expert witness and compelling him to testify as to opinions and conclusions unless he voluntarily agrees to do so. We do not deal here with an independent expert, engaged by defendant to advise him and to testify on his behalf. The person being sued is the doctor himself. The interrogatories called for facts within defendant's particular knowledge, and if any opinion is called for, it relates to what he did with respect to treating the infant. Rogotzki v. Schept, above. See, also 4 Moore's Federal Practice (2d ed. 1963), § 33.17, p. 2311, where the author states:
"* * * In passing upon objections to interrogatories the question before the court should not be whether, as a theoretical matter, the interrogatory calls for an expression of opinion, but whether an answer would serve any substantial purpose. * * * If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer."
Moore's statement is pertinent not only with respect to interrogatories 6 through 33 and 72, but also as to others hereinafter discussed.
Interrogatory No. 83 is relevant. Defendant need not answer No. 85; any opinion he may venture would be purely in the realm of conjecture. Nos. 92 and 93 are relevant and clearly proper. Nos. 99 and 100 may be answered if defendant admits he is competent to answer them. (We have in mind that it would appear he is a pediatrician and not a plastic surgeon.) Finally, interrogatories Nos. 102 and 105, asking for the books available in the doctor's personal library and in the hospital library on the subject of exchange transfusions, are relevant. Plaintiff may possibly want to explore on cross-examination what reading defendant has done in the medical literature dealing with exchange transfusions in order to probe his knowledge and expertise as a specialist. It is entirely possible that plaintiff may even inquire whether defendant acknowledges any one or more of these books as authoritative, and if he does, question him on their specific content.

*389 II.
Defendant also objects to a number of interrogatories as calling for conclusions, opinions or contentions, specifically the following:
41, defendant's reasons for preparing the baby for an exchange transfusion.
59 through 61, inquiring as to what caused the burns; could they have been avoided, and if so, how.
68, whether the scars will be permanent.
70 and 71, whether they are the result of burns sustained during the exchange transfusion, and a normal result of such a transfusion.
74, whether defendant acted as an employee of the hospital in treating the infant.
87, whether the infant suffered pain from the burns.
90, whether plastic surgery is necessary to remove the scars.
103, whether the burns could have been incurred in the absence of someone's negligence.
It is entirely proper and relevant to inquire of defendant as to what he did, and why; what he observed, and what happened in the course of or as a result of the procedures he followed. There can be no objection if the answers call for an expression of opinion, for we are dealing within the area of defendant's specialty and, in particular, with his operative procedures and treatment of the infant. However, interrogatories Nos. 74 and 103 call for legal conclusions and are improper as phrased; they need not be answered.

III.
Defendant contends that interrogatories concerning his proposed expert witnesses should be limited to discovery of their respective names and addresses, and he therefore challenges the following:
108A (2), requesting the titles, degrees and societies of all expert witnesses to be used at trial (108A(1) inquired as to their professions or vocations).

*390 108B through E, inquiring as to the names and addresses of all expert witnesses who have rendered an opinion or whose opinion is available to defendant with regard to this action; dates the opinions were rendered, whether they were written or oral, and when the patient was examined by them.
109, as to the names of texts, treatises or other works, which will be utilized by (A) the expert witnesses, or by (B) the defendant or his attorney on cross-examination of plaintiff's expert witnesses.
Defendant relies on the language of R.R. 4:16-2, which provides in pertinent part:
"* * * The party may require any other party to disclose the names and addresses of proposed expert witnesses; except as provided in R.R. 4:25-2 ["Report of Findings"], such disclosure shall be solely for the purpose of enabling the party to investigate the qualifications of such witnesses in advance of trial. * * *"
In Williams v. Marziano, 78 N.J. Super. 265 (Law Div. 1963), the court said:
"Although R.R. 4:16-2 provides only for the disclosure of the name and address of experts, it provides that this information is only for use of the other party in investigating the proposed expert's qualifications. It is difficult to see how a party may investigate a proposed expert's qualifications without encountering great difficulty, unless he is provided with some information regarding these qualifications by the answering party. It further appears that there can be no substantial prejudice or undue hardship to the defendant in requiring him to answer the interrogatories respecting both doctors' qualifications in order that plaintiff may investigate them." (at page 272)
We adopt this rationale as to No. 108A. The answer would not fall within the purview of the work product exclusion of R.R. 4:16-2. However, the answers to 108B through E would, and they therefore need not be answered.
We perceive nothing improper in the information called for by No. 109. If a treatise or other work is "utilized" by defendant's expert either in forming an opinion (without intending to refer to the book on direct examination), or by expressly referring to it while giving his opinion on direct, it is proper to cross-examine him on the text, provided *391 he admits that the treatise or other work was recognized by him as a standard authority on the subject. In Ruth v. Fenchel, 37 N.J. Super. 295 (1955), affirmed 21 N.J. 171 (1956), we said that:
"* * * for purposes of the application of the rule we adopt, it would generally be the better practice that there be some notice to the adversary of the treatise intended to be used on cross-examination. This information could be made available or elicited at pretrial, by the use of discovery proceedings, or as the court might otherwise direct." (at page 320; emphasis added)
What we have said applies to both parts (A) and (B) of No. 109. The discovery sought in No. 109A, if available to either side, would eliminate the need for trial counsel bringing in a large number of texts, only to discover when the expert is on the stand the limited number (if any) he recognizes as authoritative, and therefore available for impeachment purposes on cross-examination. It would save much time in trial preparation if respective counsel knew in advance what texts they could use in cross-examining the opposing experts. It is a frustrating experience  one which we have observed in a number of cases over the years  to have an expert witness not recognize, or refuse to recognize, treatise after treatise as authoritative.
Discovery of this kind complements Proposed Evidence Rule 63(31), which provides that an expert may refer to and read excerpts from learned treatises, recognized as authoritative, provided notice is given before trial of the proposed use. See Report of the New Jersey Supreme Court Committee on Evidence, pages 212-218 (1963), and generally, Annotation to Ruth v. Fenchel, above, 60 A.L.R.2d 77 (1958). Mutual exchange of this kind of information would, of course, make unnecessary a question like 109B, since both sides would know before trial what treatise or other works were to be used. Discovery in this area is in the best spirit of our discovery practice and our rules in general by bringing about "the elimination of unjustifiable expense and delay." *392 R.R. 4:1-2. It is but another step in the elimination from our practice of what has been termed the "sporting" concept of a law action.

IV.
Defendant also objects to that part of interrogatory No. 63 asking for the name of his insurance carrier, and No. 64 requesting a copy of the policy. R.R. 4:16-2 provides that in an action for personal injury arising out of negligence, a party may require any other party to disclose the policy limits of his liability insurance. Defendant would limit discovery strictly to whether insurance exists and, if so, the policy limits.
Whether the name of the insurance carrier and a copy of the policy are proper subjects for discovery has not yet been decided in this State. Other jurisdictions are split. See 41 A.L.R.2d 968 (1955). Dealing with the more general federal discovery rule, Civil Procedure Rule 26(b), which does not specifically address itself to insurance policies, Moore, in 4 Federal Practice, § 26.16[3], observes that decisions under that rule are sharply divided on the issue of whether, in the ordinary negligence case, it is proper to require a party to disclose whether he has insurance, the name of the company, the limits of liability, and the terms of the policy. He considers the sounder view to be that such disclosure be made, citing Hill v. Greer, 30 F.R.D. 64 (D.N.J. 1961) (allowing discovery and citing the New Jersey rule); contra, Bisserier v. Manning, 207 F. Supp. 476 (D.N.J. 1962).
We recognize that discovery of policy limits permits of enlightened settlements; on the other hand, such discovery may inhibit settlements where policy coverage is high. See 74 Harv. L. Rev. 940, 1018 (1961). Although the modern trend is to allow more and more discovery, we are compelled to the conclusion that plaintiff may not ask defendant to disclose more than the policy limits. R.R. 4:16-2 is quite specific as to the extent of allowable discovery regarding insurance. This *393 provision was added by way of amendment as recently as 1961, and our Supreme Court must have carefully considered just how far it would go in permitting discovery by the limiting language it imposed. Were it not for that language we would not hesitate in allowing plaintiff to inquire as to the name of the company and obtaining a copy of the policy.
Plaintiff in his brief speculates as to why he should be able to obtain a copy of the policy. However, he does not attempt to show significant relevance with regard to requiring an answer as to the name of the insurer and a copy of the policy. The question will not be allowed.

V.
Finally, defendant argues that the trial judge erred in refusing to strike the interrogatories on the ground that they were propounded mainly for the purpose of causing annoyance, expense, embarrassment and oppression, as evidenced not only by their length and scope, but by the fact that defendant's oral depositions had previously been taken. The taking of depositions does not forestall the serving of interrogatories. R.R. 4:23-11. Although defendant charges that the interrogatories are repetitive of what was earlier asked of him, the depositions are not set out in the record and there is nothing to show that in the course of them plaintiff secured answers to all the matters he now inquires about by way of interrogatories. We note that when the provisions now found in R.R. 4:23-11 ("Limitation of Interrogatories") were amended in the Federal Rules of Civil Procedure, the Federal Advisory Committee said:
"* * * It may be quite desirable or necessary to elicit additional information by the inexpensive method of interrogatories where a deposition has already been taken. The party to be interrogated, however, may seek a protective order from the court under Rule 30(b) where the additional deposition or interrogation works a hardship or injustice on the party from whom it is sought." 4 Moore, above, § 33.01[3], p. 2257. *394 It might also be observed that if, as defendant claims, there is repetition, then he previously voluntarily gave the information to which he now objects at some length in Points I to IV of his brief. In any event, the action of the trial court in such a matter as harrassment should not be upset unless there is abuse of discretion or clear error.
The order under appeal is modified in the respects mentioned in the course of this opinion and, as modified, affirmed.