PIERCE, P. J.
 

 In these consolidated mandamus petitions petitioner, defendant in an action for medical malpractice, seeks to prevent discovery by plaintiff (real party in interest) of certain materials and certain information. The subjects are suitable for separate discussion.
 

 Re Sufficiency of the Affidavit Supporting the Subpoena Duces Tecum. (No. 11702)
 

 At a preliminary to the taking of the deposition of the record custodian of the Yolo County Hospital plaintiff sought a subpoena duces tecum covering hospital records relating to defendant doctor. The latter moved to quash, contending insufficiency of the supporting affidavit. The trial court ordered
 
 *104
 
 production of a part of the records, denying plaintiff access to others. We issued an order to show cause and a stay order. After hearing argument we have concluded the trial court’s order was properly made. Much of that which follows is paraphrased from Judge Warren Taylor’s memorandum opinion (accomplished more easily than quotations, braeketing-in and bracketing-out).
 

 The affidavit avers that the hospital custodian has under his control: “All records and documents in his files, and particularly in the files of his personnel department or office, pertaining to Dr. Eugene W. Kenney, including but not limited to: appointment papers, documents granting privileges; payroll records, retirement records; records of disciplinary proceedings ; records pertaining to his status on the staff of the hospital, if any, and his removal therefrom, if any there has been. ’ ’ It is stated: “Said documents contain relevant and material evidence upon the issue of negligence of Dr. Kenney in treating and casting a fracture of the left forearm of the minor plaintiff . . . .”
 

 Had the affidavit merely alleged that much it would state merely a legal conclusion.
 
 (McClatchy Newspapers
 
 v.
 
 Superior Court,
 
 26 Cal.2d 386, 396 [159 P.2d 944].) It would not comply with Code of Civil Procedure section 1985 which requires that the affidavit “set forth in full detail the materiality [of the matters and things desired to be produced] to the issues involved in the case ....’’ But the affidavit here goes on to say: ‘1 declarant is informed and believes that on or about the dates here in question, to-wit: February 19-22, 1965. Dr. Kenney was privileged to practice at Yolo County Hospital, and the said documents may lead to the discovery of relevant evidence concerning Dr. Kenney’s past experience at the said hospital; the kinds of operations he has performed there; the nature and extent of his professional privileges at the hospital; physicians and surgeons with whom he has associated in the past, and who have knowledge of his abilities; prior instances of professional misfeasance, if any; disciplinary proceedings relating to charges of misfeasance against him, and admissions he may have made therein; whether he has resigned from said hospital or been removed from the staff thereof—all of which may lead to the discovery of admissible evidence on the questions of the doctor’s qualifications, background, skill, negligence in the instant ease. ’ ’ Also declared in the- affidavit is- the ■ fact that the hospital administrator-had declared -there-is a-hospital policy against the release of its records-wi-thout a court
 
 *105
 
 order. Thus plaintiff has no access to any of this information while defendant will either have access to it or knowledge of its contents.
 

 A party is required to show good cause to obtain discovery under certain discovery sections of which said section 1985 of the Code of Civil Procedure is one. (Code Civ. Proc., § 2036;
 
 Flora Crane Service, Inc.
 
 v.
 
 Superior Court,
 
 234 Cal.App.2d 767, 789-790 [45 Cal.Rptr. 79].)
 

 Under section 2036 as added in 1963 (Stats. 1963, ch. 1744, § 2, p. 3479) “mere proof of the relevance of the information sought . . . shall not be sufficient.” Section 1985, as we have seen, speaks of “materiality . . . to the issues involved in the ease.” Both these statements, ease construed, are to be governed by discovery standards, the objectives of which are “not merely the discovery of admissible evidence, but also effective preparation for trial. ’ ’
 
 (Associated Brewers Distributing Co. v. Superior Court
 
 (1967) 65 Cal.2d 583, 587 [55 Cal.Rptr. 772, 422 P.2d 332].) Elaboration of “effective preparation for trial” as stated in the case last cited is unnecessary to our discussion under this caption.
 
 [1]
 
 The trial court found: “. . . Plaintiff has made a sufficient showing regarding the records of defendant’s disciplinary proceedings, and the records of his status on the staff of the hospital, if any, and his removal therefrom, if any. These records, if they exist, have possible discovery value and may assist plaintiff in his preparation for trial. They are adequately described in plaintiff’s affidavit . . . . ” It ordered their production.
 

 We agree with that determination. Records of disciplinary proceedings, or of the status of a doctor on a hospital staff, or of his removal therefrom, may or may not be admissible in evidence. Even if inadmissible such records may very well point the way to evidence admissible in a medical malpractice action.
 
 (Myers
 
 v.
 
 St. Francis Hospital
 
 (1966) 91 N.J. Super. 377 [220 A.2d 693, 15 A.L.R.3d 1432 at p. 1440]; see notes
 
 id.,
 
 pp. 1448, 1453, 1454.) True, there is indecision evidenced in plaintiff’s counsel’s affidavit and there was a frank admission by plaintiff’s counsel at oral argument of uncertainty as to
 
 *106
 
 the extent of the material within the described categories under the hospital’s control. (That, under the circumstances of the ease, is probably inevitable.) It would be unrealistic and time consuming, however, to require plaintiff first to exhaust all discovery processes to determine precisely what the hosptal
 
 does
 
 possess fitting the prescription of the demand as a condition precedent to the issuance of the subpoena duces tecum. Production contemporaneous with the taking of the deposition of the custodian conserves time, helps speed the progress of the litigation to its ultimate trial and determination and can do no harm. The custodian of the records cannot produce that which he does not have. Neither harassment nor oppression is involved.
 

 Authorities antedating the modern discovery laws of 1958 have held that allegations in affidavits on the basis of which the issuance of a subpoena duces tecum in connection with depositions are sought are insufficient if issued when made on information and belief. These cases are collected in
 
 Proctor & Gamble Mfg. Co.
 
 v.
 
 Superior Court,
 
 124 Cal.App.2d 157, at page 161 [268 P.2d 199]. The language of Code of Civil Procedure section 1985, requiring specification of “the exact matters or things desired” seemingly connotes a rigidity which lends sustenance to those earlier authorities. But the broadening of the scope of discovery both by statutory and ease law since the enactment and original interpretation of section 1985 makes the earlier cases of little value. And, as a practical matter, how is a plaintiff ever to learn of the existence of these perhaps important sources of evidence vital to his cause except through information and belief
 
 í
 
 The aim of discovery is the ascertainment of truth—which is the aim of the court. The purpose of placement bjr the Legislature of the burden of showing good cause upon the party seeking information of the kind under discussion (as contemplated by Code Civ. Proc.. § 2036, enacted in 1963; Stats. 1963, ch. 1744) was to protect further
 
 [2]
 
 the opposing party from unwarranted invasions of his privacy and there must be in every case a balancing between legitimate ascertainment of facts relevant and material to the issues and interference with a litigant’s right of privacy. We think the trial court preserved that balance in the matter under discussion. It quashed the subpoena duces tecum “to the extent that such subpoena requires . . . [the records custodian] to produce records and documents in his files consisting of Dr.
 
 *107
 
 Eugene W. Kenney’s appointment papers, documents, granting privileges, payroll records and retirement records.” We hold that the court's order was as conservatively restricted as defendant could properly ask.
 

 Re the Right op Plaintiff to the Names, Addresses etc. of Certain Experts
 

 Plaintiff served upon defendant a set of interrogatories. Certain of them were unanswered and plaintiff filed a notice of motion to compel responses. That motion was granted in part, denied in part.
 

 The questions may be epitomized: defendant was asked: 1. To disclose the fact as to whether he had conferred with experts “pertaining to any facts dealing with the medical care, treatment, prognosis, diagnosis, etc., of plaintiffff . ...” In the event of an affirmative answer further disclosure of name, address, specialization of such expert, date of contact, etc., was demanded. 2. To disclose whether any experts would be called as witnesses; if so, the same data regarding them was sought. The interrogatory also was a continuing demand: i.e., defendant was required to remember to furnish plaintiff with names and statistical data regarding potential expert witnesses not then contemplated if and when a later determination might be made to call them. 3. To disclose whether the “factors” relating to the case had been presented to a medical committee. An affirmative answer was to involve disclosure of the dates and places of conferences, “names and addresses and telephone numbers and type or class of doctors that were on said committee. ’ ’
 

 In ruling on said motion the court ordered a “yes” or “no” answer to question 1, and also so framed its order that an affirmative answer would require defendant to make the further disclosures demanded. Defendant was also required (in answer to question 2) to give the names and statistical information requested regarding witnesses then contemplated to be called. lie was not required to heed the continuing nature of the demand. He was required to answer interrogatory 3. In partial compliance with the order certain answers were given.
 
 [3]
 
 Defendant admitted he had consulted with experts and stated he then planned to call a named physician as a witness. The answer also affirmed “that we plan to call” other experts whose names were Not given. Also affirmed was the fact that
 
 *108
 
 matters relating to the case had been presented to a medical committee, the members of which were not disclosed.
 

 Defendant-petitioner bases his refusal to disclose the still unanswered information upon the ground that to do so would violate the “work product” privilege conferred by statute. (Code. Civ. Proc., § 2016, subds. (b) and (g).
 
 [4]
 
 )
 

 We must first consider the answer that defendant plans to call experts other than the one named. That answer is ambiguous. It could refer (1) to persons
 
 now known
 
 but who may or may not be called as witnesses; or (2) to experts not now known. If it refers to the latter, defendant is not required to give an answer. The court order expressly provides that defendant is not required to accede to ‘ ‘continuing ’ ’ demands.
 
 [5]
 

 If, however, the answer refers to category (i), i.e., experts now known, possibly but not certainly to be called as witnesses, then their names, addresses, etc., are discoverable. The reason: it will enable plaintiff to investigate the qualifications of such experts and prepare for their proper cross-examination that is within the scope of proper discovery. (See
 
 Myers
 
 v.
 
 St. Francis Hospital, supra,
 
 220 A.2d 693, 15 A.L.R.2d 1432, and see note
 
 id.
 
 p. 1453.) “. . . The power of impeachment ... is a valuable instrument in the process of truth ascertainment. ’ ’
 
 (Brown
 
 v.
 
 Superior Court,
 
 218 Cal.App.2d 430, 443 [32 Cal.Rptr. 527].)
 

 The right to learn the names, addresses and other statistical information concerning known potential expert witnesses does not, however, include the right to obtain information (via any of the procedural discovery processes) which defendant or defendant’s attorney may have imparted to such experts while preparing to defend the action. To permit that would be a violation of the “work product” rule (Code Civ.
 
 *109
 
 Proc., § 2016, subds. (b) and (g)
 
 ; Brown
 
 v.
 
 Superior Court, supra,
 
 218 Cal.App.2d 430.) When this court decided the
 
 Brown
 
 case the 1963 amendment to said sections had been adopted and later became effective as chapter 1744, Statutes of 1963. We discuss these amendments in the
 
 Brown
 
 opinion on page 441. We there point out that, under those amendments, all of an attorney’s “work product” is made nondiscoverable “ ‘unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice.’ ” (P. 443.) And the amendment states “It is the policy of this State (i) to preserve the rights of attorneys to prepare eases for trial with that degree of privacy necessary to encourage them to prepare their eases thoroughly . . . .” (Code Civ.Proc., § 2016, subd. (g).) In a fact situation quite similar to that here involved, we held in
 
 Brown
 
 that disclosures of the type we now discuss were nondiscoverable. We have not changed our views in that regard. Those views have been adopted by another California appellate court in
 
 Scotsman Mfg. Co.
 
 v.
 
 Superior Court,
 
 242 Cal.App.2d 527, 529 [51 Cal.Rptr. 511].)
 

 The propriety of the third interrogatory (demanding the names, addresses, etc., of the members of the medical committee) poses a more difficult question. We have determined, however, that the trial court improperly decided that defendant must furnish that information. We agree with petitioner that disclosure could serve no purpose except an improper one—to permit plaintiff’s counsel to attempt to obtain from such committee members disclosures which defendant or defendant’s attorney may have made to the committee, disclosures which, as we have already shown, are protected by the “work product” privilege.
 

 We are aware of possible abuses of the so-called “medical committee ’ ’ system. Obviously, it is not in the interests of justice to countenance any attempt by defendant or his counsel in a medical malpractice action to “corner” the supply of “top-drawer” medical experts, silencing them as potential plaintiff’s witnesses by the process of placing them on a committee to be consulted by the defense in every claim against a doctor for malpractice. In small communities the evils of such a practice could be particularly aggravated, since plaintiffs must bear the burden of proving negligence where the test thereof is the doctor’s failure to exercise the standard of skill of the doctor
 
 practicing in that community.
 

 Nevertheless, the court has the power to exercise controls to
 
 *110
 
 prevent such abuses. The “work product” privilege is not an absolute one, as we have shown. (See fn. 4.) No such abuse as that assumed above has been shown here. Moreover, as we observed in
 
 Brown
 
 v.
 
 Superior Court, supra,
 
 218 Cal.App.2d 430, at page 443, the medical committee serves a very useful purpose. It furthers the settlement of medical malpractice actions before trial and without the notoriety which can be so damaging to a doctor’s reputation. Harassment of committee members by subjecting them to importunement to disclose information received from, or imparted to, defendant or his attorney would destroy the efficacy, if not the existence, of these committees.
 

 And to what purpose ? Knowledge of the names of the doctors on the committee—absent the court-controllable abuses of the system mentioned above—cannot help a plaintiff in the preparation of his case. His counsel has the right to select and seek out any doctor, be he general practitioner or specialist, with whom he may desire to discuss the case, from whom he may wish to obtain medical information, or whom he may wish to call as a witness. He may take any doctor’s deposition and will not be bound by the answers. We can conceive of no special or peculiar value which membership on a committee would confer to the opinions of a doctor—unless the doctor is to be called as a defense witness (and in that case, as we have held, defendant must release the doctor's name).
 

 In proceeding No. 11702 (to quash the subpoena duces tecum) the order to show cause is dismissed and the peremptory writ is denied. Let a peremptory writ of mandate issue in proceeding No. 11684 as prayed for, provided, however, that defendant shall be required to furnish to plaintiff the names, addresses, telephone numbers and special qualifications of any experts now known to defendant whom he presently contemplates he will or may call as defense witnesses and regardless of whether such potential witnesses are or arc not members of the medical committee herein referred to.
 

 Friedman, J., and Kegan, J., concurred.
 

 [1]
 

 The scope, purpose and intent of the California discovery system is set forth at length in
 
 Greyhound Corp.
 
 v.
 
 Superior Court,
 
 56 Cal.2d 355, 375-377 [15 Cal.Rptr. 90, 364 P.2d 266], Although some of the Code of Civil Procedure sections controlling discovery procedures have been amended subsequent to the
 
 Greyhound
 
 case (see e.g., Stats. 1963, ch. 1744), the general purpose and intent of the system has not changed. (See e.g.,
 
 Associated Brewers Distributing Co.
 
 v.
 
 Superior Court, supra,
 
 65 Cal.2d 583, 587;
 
 Flora Crane Service, Inc.
 
 v.
 
 Superior Court, supra,
 
 234 Cal.App.2d 767, 776; Witkin, Cal. Evidence, ch. 11, p. 875 et seq.)
 

 [2]
 

 Coiu’ts had already been authorized to protect him from oppression and harassment. (See e.g., Code Civ. Proc., § 2019, subds. (b) and (d).)
 

 [3]
 

 Originally made by letter, it has since been stipulated that sneli answers shall be treated as though made as required by law and with the same binding effect. They shall be so regarded hereafter.
 

 [4]
 

 Section 2016, subdivision (b), reads in part: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney’s impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.
 

 Section 2016, subdivision (g), reads: "It is the policy of this state (i) to preserve the rights of attorneys to prepare eases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary’s industry or efforts.”
 

 [5]
 

 Plaintiff has not appealed from the order; the obligation to comply with demands for information to be obtained in the future is not an issue before us. (We do not reach out to make it one.) (But see
 
 Smith
 
 v.
 
 Superior Court,
 
 189 Cal.App.2d 6, 11 [11 Cal.Rptr. 165, 88 A.L.R.2d 650].)