## Firschein v. Lafayette College

*J. Stephen Kreglow*, for plaintiff.
*George C. Laub*, for defendant.

WILLIAMS, *J.*, May 2, 1978—This matter is before the court upon motion of defendant, Lafayette College, for a protective order under Pa.R.C.P 4012. After suit was commenced by a writ of summons, plaintiff, William Firschein, obtained a court order under Pa.R.C.P. 4009 requiring defendant to produce for inspection and/or photographing various documents from its files. Defendant then

moved for a protective order to prevent discovery by plaintiff on the basis that the material sought is privileged and furthermore that such discovery would cause unreasonable annoyance and expense.[1] Depositions were taken in support of defendant's motion and are part of the record before the court.

Defendant has made no effort to show that the inspection sought in these discovery proceedings would cause unreasonable annoyance, embarrassment, expense or oppression, thus the sole issue to be decided here is whether the questions asked and the information sought relate to matter privileged under Pa.R.C.P. 4011.

A brief factual history is necessary. At some time in 1975, the department head of Lafayette's art department learned that one of its part-time lecturers would not be returning for the coming academic year. Based on this information, the department head considered restructuring the department and initiated the applicable decision-making process. The suggested restructure would eliminate the two part-time employes of the art department and hire one full-time lecturer. Plaintiff was one of the individuals whose part-time lecturing position would be eliminated by the changes. The departing lecturer was the other. The suggestion was considered

---

1. Defendant also questioned the relevance of some of plaintiff's broad inquiries; however, plaintiff's motion to produce has been amended so that the relevance of the requests is no longer at issue. In addition, certain documents requested by plaintiff have been delivered to him, viz., copies of plaintiff's three amended contracts with the college as a part-time lecturer in art, a copy of the charter and statutes of the college, the faculty handbooks which were in force for the period of plaintiff's employment and college catalogs for the same period.

by the proper hierarchy[2] of the college and was adopted. Plaintiff then applied for the available full-time position but, after review by the appropriate committees,[3] another applicant was hired.

Plaintiff now seeks discovery of the following material so as to determine whether he was legally wronged by defendant:

*Items (a), (c), (e), (f), (h):* Every document submitted to or generated by either the A P & D Committee of defendant, any past or present president of defendant, any past or present provost of defendant, any past or present dean of defendant, or any past or present chairman of defendant's art department concerning plaintiff or the reorganization of the art department.

*Items (b) and (d):* All documents concerning plaintiff which relate to the agenda of the A P & D Committee or the report of defendant's president to the trustees for academic year 1975-76 and which concern the filling of the new full-time position in the art department, and any communications or conference with the head of the art department relating to staffing or reorganization of the art department.

*Item (g):* Every document (including memorandum of conversations and meetings) concerning one David Del Bello, a former student of defendant who graduated in 1977, and the college president, dean of students or provost in which plaintiff is mentioned.

---

2. Changes in the structure of a department begin with the Appointments, Promotions and Dismissals Committee (A P & D Committee) and then go to the provost and president of the institution for review and approval.

3. The Search Committee and then the A P & D Committee.

*Item (i):* Every document prepared by or for representatives of defendant pertaining to plaintiff.

*Item (j):* Every document summarizing or otherwise relating to conversations between the chairman of defendant's art department and either defendant's provost or defendant's president during the academic year 1975-76 and concerning plaintiff in any way.

Defendant invokes Pa.R.C.P. 4011 for the proposition that the sought-after material is not discoverable. The relevant portion of Rule 4011 provides: "No discovery or inspection shall be permitted which . . . (c) relates to matter which is privileged or would require the disclosure of any secret process, development or research."

The college contends that since it has a written faculty and administrative policy that all of the sought-after material is confidential, the material is privileged and not discoverable. Defendant bolsters its contention by reference to the fact that in the case of evaluative letters concerning teaching personnel, the persons invited to furnish same are assured of confidentiality and that A P & D Committee members are constantly admonished and reminded that the materials with which they are dealing are confidential. Defendant further notes that unless such evaluative letters and comments remain confidential, they will become worthless statements and the process of evaluation will be devastated.

However, the argument advanced by the college impliedly admits that there is no statutory or common law privilege which protects these communications. The college argues that since the four fundamental conditions, recognized by Wigmore in his

renowned treatise on evidence,[4] necessary to the *establishment* of a privilege against disclosure are here present, the communications are beyond the realm of discovery. Thus the specific issue raised is whether this court will judicially create the sought-after privilege. This we decline to do for, as noted by the court in Tannenbaum v. May Dept. Stores, 65 D. & C. 2d 700, 702 (1974): "Courts have no inherent power to specially, or generally, invest witnesses with any privilege to refuse to testify, nor to create privileges in the field of law relating to evidence and witnesses. Power to prescribe rules of evidence and, per extenso, rules creating privileges not to testify,[5] was specifically denied to Pennsylvania courts by the Constitutional Convention of 1967-68 during the debate on the Judiciary Article, Resolution No. 1000, Con. Con. 1968." In Tannenbaum, supra, the court identified all recognized privileges in Pennsylvania, whether of constitutional or statutory origin, found the banker-

---

4. "(1) The communications must originate in a *confidence* that they will not be disclosed.

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relations between the parties.

"(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

"(4) The *injury* that would insure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." 8 Wigmore on Evidence, §2285 (1961). (Emphasis in original.)

5. The rules of evidence which would govern privileged matters at trial govern such matters when they arise during discovery, and whenever a claim of privilege would be proper at the actual trial of the case, it is proper at the discovery stage: 23 Am. Jur. 2d §169.

customer "privilege" not among them, and, after recognition of the bounds of judicial power, refused to add it to the list. The creation of a privilege as a legislative prerogative is recognized by Wigmore himself. In that part of his treatise immediately following the section wherein he discusses the foundational policy determining all privileges, Wigmore notes:

"[T]he mere fact that a communication was made in express confidence, or in the implied confidence of a confidential relation, does not create a privilege. . . .[6] This common law rule is not questioned today. No pledge of privacy nor oath of secrecy can avail against demand for the truth in a court of justice. Accordingly, *in the absence of statute to the contrary,* a confidential communication between . . . person[s] not holding one of the specific relations hereafter considered, is not privileged disclosure."[7] (Emphasis supplied.)

Wigmore then described the privileges recognized at common law and the novel ones today recognized by statute among neither of which is the privilege herein sought. However, the most convincing evidence that the power to create a privilege against discovery is reposed in the legislative branch lies in review of the dispute concerning

---

6. This tenet is echoed in 23 Am. Jur. 2d §165 where it is stated: "One is not exempted from producing material, books and papers merely because they are private. . . ." Further on, the treatise relates " . . . a party cannot refuse to produce private and confidential letters from a stranger on the ground that the writer forbids their production."

7. 8 Wigmore on Evidence, §2286.

discovery of a hospital's internal records or communications as to the qualifications or evaluations of individual physicians. Analogy to that dispute is relevant here because similar policy considerations are involved.

In recent medical malpractice actions and in other civil litigation, parties have often sought to discover a public or private hospital's internal records or communications as to the qualifications of an individual physician, evaluations of him by his colleagues, disciplinary proceedings against him, or internal hospital proceedings in which his admission to the hospital staff, or his continuance thereon, were at issue. Hospitals usually resisted such discovery, arguing that the candor necessary to the effective functioning of these committees would be destroyed if their proceedings were discoverable. However, in recent cases of other jurisdictions the public policy argument has been held insufficient to justify engrafting an exception to a state's procedural rules for discovery, at least where no such privilege was expressed in either the state's general law of evidence or in its statutes. Thus, in Nazareth Literary & Benev. Institution v. Stephenson, __ Ky. __, 503 S.W. 2d 177 (1973), written statements received by a hospital from physician members of its staff in which reports were made about the professional activities of a physician possessing temporary staff privileges were held discoverable. Likewise, in Kenney v. Superior Court of Yolo County, 255 Cal. App. 2d 106, 63 Cal. Rptr. 84 (1967), all records and documents in a hospital's files pertaining to a physician malpractice defendant's disciplinary proceedings, his status on the staff of the hospital, if any, and his removal therefrom, if any, were held discoverable

by means of a subpoena duces tecum addressed to the custodian of hospital records.[8] Thus, there emerged the following general rule:[9] In the absence of a statute creating a special privilege against discovery for reports of proceedings of hospital staff committees, internal hospital records as to the qualifications and evaluations of individual physicians are discoverable.

In apparent response to this rule and the pressure exerted by review committees, legislatures throughout the nation began to enact statutes creating a special privilege for hospital review committees. The statutes were enacted upon the theory that external access to peer investigations conducted by hospital staff committees stifles candor, inhibits objectivity, and prevents effective upgrading of medical service. The statutes therefore represent a legislative choice between competing public concerns: embracing the goal of medical staff candor at the cost of impairing access to evidence by a potentially aggrieved party.[10]

In July, 1974, the Pennsylvania legislature enacted such a statute, entitled the Peer Review Protection Act, which provided for the confidential-

---

8. See also Myers v. St. Francis Hospital, 91 N. J. Super. 377, 220 A. 2d 693 (1966).

9. Not without exception: See Bredice v. Doctor's Hospital, Inc., 50 F.R.D. 249 (D.C. Dist. Col. 1970), and discussion thereof in Hospital Committee Proceedings and Reports: Their Legal Status. American Journal of Law & Medicine, Vol. 1, No. 2, Fall, 1975.

10. See 81 A.L.R. 3d 944 for a more extensive analysis of this dispute.

ity of a review organization's records.[11] Thus, the Pennsylvania legislature chose to enhance medical service through effective peer review. Defendant, here, asks this court to examine the policy considerations relevant to an institution of higher learning, weigh them against those of a potential plaintiff, and choose in favor of confidentiality for the internal records of an institution of higher education. This is a legislative choice and we respectfully decline the invitation.[12]

Defendant additionally argues that plaintiff's endeavors would require the disclosure of a secret process or development and as such are proscribed by Pa.R.C.P. 4011(c). Defendant argues that it is engaged in the "creation" of a well-educated, cultured and cultivated man or woman. It further argues that since competent teaching is the sine qua non of higher education, its process of securing competent teachers and structuring them within departments must remain inviolate if it is to produce a competitive end product. Defendant cites no authority for this novel proposition and suffice it to say that we are not persuaded that the Lafayette graduate, while clearly outstanding, is the product of a secret educational process which gives him or her an advantage over competitors who do not graduate from that process.

11. Act of July 20, 1974, P.L. 564, secs. 1, 4, 63 P.S. §§425.1, 425.4.

12. The college does not contend and we do not decide whether a privilege of confidentiality could exist by contact if plaintiff had been a member of the faculty and subject to its by-laws and policy.

Lastly, defendant succinctly argues that plaintiff's request concerning the student file of one David Del Bello [Item (g), supra] must be dismissed because discovery of that file is prohibited by the Family Educational Rights and Privacy Act.[13] We must again disagree. The Privacy Act merely provides that a school which habitually permits release of a student's records without the student's consent, or that of his/her parents if the student is under 18 years of age,[14] runs the risk of losing its federal funding.[15] Furthermore, the act anticipates release of such records if the release is judicially ordered. Section (b)(2)(B) of the act provides exception to the monetary sanction otherwise imposed on the school if the "information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith

13. Act of August 21, 1974, 88 Stat. 571, as amended, 20 U.S.C.A. §1232g.

14. Section (d) of the Act specifically provides: "(d) For the purposes of this section, whenever a student has attained eighteen years of age, or is attending an institution of post-secondary education the permission or consent required of and the rights accorded to the parents of the student shall thereafter only be required of and accorded to the student."

15. Section (b)(2) states: "(2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information. . . . ."

by the educational institution or agency."[16] Thus, the exception for court ordered release and its concommitant provision for notice impliedly recognize that the records herein sought are discoverable. However, in deference to the position in which the college finds itself, compliance with our order to produce with regard to the student file of David Del Bello is deferred for 60 days so that the college may notify the appropriate parties pursuant to the Family Education Rights and Privacy Act.

Wherefore, we make the following

## ORDER

And now, May 2, 1978, defendant's motion for a protective order is hereby denied. Defendant is directed to produce the documents sought in plaintiff's motion for production as amended.

Compliance with this order, in regard to production of the student file, is deferred for 60 days from the date of this opinion and order.

---

16. 20 U.S.C.A. §1232(g)(b)(2)(B).