[No. B008610. Second Dist., Div. Three. May 21, 1985.]

MICHELE H. BROWN, a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WEST HILLS MEDICAL CENTER et al., Real Parties in Interest.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of part I of the Discussion.

490

## Counsel

I. Alfred Breckler and Gerald Goldfarb for Petitioner.

No appearance for Respondent.

Omansky & Lazarus, Horvitz & Levy, Ellis J. Horvitz and David S. Ettinger for Real Parties in Interest.

## Opinion

**LUI, Acting P. J.**—Petitioner Michelle H. Brown, through her guardian ad litem, Morris Brown, seeks discovery of certain information relevant to the action she has filed against Dr. Robert A. Grant for medical negligence and West Hills Medical Center (Hospital) and others for "hospital negligence," fraud and intentional misrepresentation.[1]

Hospital claims that it need not produce the information sought by petitioner because such information is not subject to discovery pursuant to Evidence Code section 1157.[2] Section 1157 was enacted in 1968 and provides in part: "Neither the proceedings nor the records of organized committees of medical . . . staffs in hospitals having the responsibility of evaluation and improvement of the quality of care rendered in the hospital or medical . . . review committees of local medical . . . societies shall be subject to discovery. Except as hereinafter provided, no person in attendance at a meeting of any such committee shall be required to testify as to what transpired thereat. The prohibition relating to discovery or testimony shall not apply

---

[1]The third amended complaint alleged in part that Hospital "negligently and fraudulently, materially misrepresented said compliance [with the minimum standards required by the Joint Commission on Hospital Accreditation] to the public and Plaintiff herein, and with knowledge thereof, failed and neglected to adequately supervise or control the conduct of the Defendants herein, over an extended period of time, thereby permitting the careless, negligent, reckless, and callous conduct of said Defendant ROBERT A. GRANT, M.D., proximately resulting in the serious bodily harm and physical disability of the Plaintiff herein . . . ." The complaint specifically alleged that the review of Dr. Grant's charts and patient records were not within the standard of practice; that Hospital bylaws required medical malpractice insurance but Dr. Grant was and is uninsured; and that at the time the tort arose, Dr. Grant had more than 85 malpractice lawsuits filed against him. In seven of those cases between 1970 and 1975 Hospital was a codefendant; between 1975 and 1980, Hospital was a codefendant with Dr. Grant in 22½ percent of all cases sounding in malpractice against Hospital. Plaintiff specifically alleged "failure to evaluate and review the medical activities" and failure "to investigate, evaluate, and do all those things mandated by this JOINT COMMISSION . . . ."

[2]Hereinafter, all references shall be to the Evidence Code unless otherwise indicated.

to the statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits. [¶] The prohibitions contained in this section shall not apply to medical . . . society committees that exceed 10 percent of the membership of the society, nor to any such committee if any person serves upon the committee when his or her own conduct or practice is being reviewed. . . ."[3]

The petition for writ of mandate alleges that the superior court abused its discretion and acted against the law by erroneously applying section 1157 in refusing to grant petitioner the discovery she seeks, "i.e., (a) Discovery of whether or not [Hospital] screened the competence of its medical staff, particularly co-defendant Robert Grant, M.D. . . ., as required by *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 . . .; and (b) Discovery of whether or not HOSPITAL required medical malpractice insurance coverage of its staff member GRANT, as required by HOSPITAL's by-laws." For the reasons stated below, we conclude that the trial court erred in applying section 1157 to some of petitioner's requests for discovery.

### PROCEDURAL HISTORY

In December 1983, petitioner filed a motion to compel production of documents including Dr. Grant's original staff and reappointment applications, letters sent from Hospital to others, and documents from various committees. Petitioner requested an *in camera* hearing to enable the court to determine the discoverability of certain documents. Judge Fainer appointed retired Judge Sidney Kaufman as a referee to hear and determine the discovery dispute consistent with section 1157 and *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156] and to make findings and recommendations.

At a hearing held January 26, 1984, counsel for petitioner argued that some of the documents had been mislabeled as committee files and should not fall within section 1157 and that "we're not asking for content of committee meetings but for proof that meetings actually took place." After an *in camera* hearing, the referee concluded that the documents were of little value and found there was no mislabeling. He upheld the "privilege" asserted pursuant to Evidence Code section 1157.

---

[3]Amendments to section 1157 in 1978, 1982, and 1983 added dentists, podiatrists, veterinarians, and others to those for whom such staff review shall not be subject to discovery. The 1983 amendment also provided that the amendments made in 1983 "shall not exclude the discovery or use of relevant evidence in a criminal action."

Counsel appeared before the trial court on June 25, 1984, on petitioner's motion to compel answers to interrogatories. Counsel for petitioner stated: "All we want to do is find out if a committee met and considered. We don't want to consider whether they white washed him, blamed him or did anything. We just want to know if they paid any attention. [¶] We don't think that breaches 1157 or its sanctity."[4]

The trial court decided to send the matter to Referee Kaufman to make a ruling on the interrogatories.

A second hearing was held before Referee Kaufman on July 31, 1984. Before going through each request for admission and each interrogatory, the referee commented that some of the material he had excluded from discovery in the previous hearing might be discoverable under the recent decision in *Snell* v. *Superior Court* (1984) 158 Cal.App.3d 44 [204 Cal.Rptr. 200]. After objection by counsel for the Hospital, the referee declined to reconsider the previous rulings in light of *Snell*. The referee made rulings on the requested items, finding some to be discoverable and others not.

In responding to arguments by petitioner's trial counsel, the referee stated: "Common sense says that I should agree with you. Even fair play says I should agree with you, but the law doesn't. That's what is bothering me and I admit it. . . . [¶] I have to confess that all of my sympathy is with you in this case, but I can't rule in your favor because I don't believe that that is the law. . . . [¶] I believe that the Legislature, in its wisdom or lack thereof have written this in such a way that I can't give you what you want. . . ."

Following the report of the referee, petitioner noticed a motion to reconsider in part the referee's decision. At the same time, petitioner filed a motion to compel production of documents including the blank medical staff application for the Hospital from 1975 to 1979; Dr. Grant's reapplications from 1975 to 1979; the rules, bylaws and regulations of the Hospital from 1975 to 1979; and memos, notes, reports and letters regarding Dr. Grant's professional conduct that had been exchanged between the board of governors and the administration of the Hospital. In a hearing held October 1, 1984, Judge Ricardo Torres confirmed the referee's findings of August 24,

---

[4]However, as with some of the interrogatories, counsel was more specific in asking for "whited out pages of committee meetings, just to simply show all of these old cases [filed against the doctor] were or were not revieweed [*sic*] . . . ." Counsel then retreated and said he did not want the documents but just wanted to know "did a committee review a certain case under—and we list the committees that go—we don't want to know if it was favorable or unfavorable. We simply want to know if it was done."

1984, and reaffirmed the court's findings of January 26, 1984. However, the court observed: "I can't make new law. But I can understand and I can sympathize with you. I think it's a little on the outrageous side that all of the hospitals are no longer holding it in administrative files and putting everything in those committees and everything is going there, but 1157 says that is privilege." He also observed: "There is no question in the court's mind . . . that the hospitals are abusing 1157, but I can't do anything about that."[5]

## ISSUES PRESENTED

Petitioner contends:

1. Notwithstanding Evidence Code section 1157, petitioner is entitled to discover from Hospital whether or not Hospital fulfilled its duties to screen the competency of Dr. Grant.

2. The respondent court erred when it refused to allow petitioner to discover whether Hospital enforced its bylaw requiring Dr. Grant to carry medical malpractice insurance.

Real parties in interest contend in their return:[6]

1. The writ petition should be denied because it is not properly verified.

2. The trial court correctly applied the discovery immunity of Evidence Code section 1157.

3. It is irrelevant whether the Hospital asked its staff physician if he had malpractice insurance. Accordingly, the trial court's denial of discovery on that subject was not an abuse of discretion.

## DISCUSSION

I. *The Verification Is Adequate**

. . . . . . . . . . . . . . . . . . . . .

---

[5]The court correctly denied the motion to compel production of documents that petitioner had not requested prior to the motion to compel.

[6]The return was filed following our Supreme Court's order granting the petition for hearing and retransferring the matter to this division "with directions to issue an alternative writ to be heard before [this] court when the proceeding is ordered on calendar."

*See footnote, *ante,* page 489.

II. ■ *The Trial Court Erred in Refusing to Grant Petitioner Discovery of Whether or Not Hospital Had Evaluated Dr. Grant*

Petitioner states that she is seeking to discover (1) does Hospital know whether peer review of Dr. Grant occurred? and (2) if so, did peer review of Dr. Grant occur?[7] She argues that she does not seek to know what occurred at peer review meetings but only *if* anything happened. Hospital contends that petitioner in fact is seeking to discover much more information than merely whether Hospital screened the competence of Dr. Grant and, in any event, section 1157 prevents petitioner from discovering even whether an evaluation of Dr. Grant was conducted by any of the committees of the Hospital.[8]

We agree with Hospital that some of the discovery sought by petitioner clearly goes beyond the question of whether an evaluation was conducted. For example, request for admission number 67 states: "The records of Gail D. Kahn, admitted to WEST HILLS HOSPITAL on or about the year of 1969

---

[7]Petitioner lists the following requests for admissions, denied by Referee Kaufman:

"12. In 1970, ROBERT A. GRANT, M.D., was not re-evaluated for staff privileges.

"23. In 1970, ROBERT A. GRANT, M.D., was not required to obtain medical consultation on pre-operative surgical patients.

"34. In 1970, the credentials committee of WEST HILLS HOSPITAL did not re-evaluate ROBERT A. GRANT's hospital admitting privileges.

"45. In 1970, the surgical committee of WEST HILLS HOSPITAL did not re-evaluate ROBERT A. GRANT's surgical privileges.

"56. During the year 1970, the record committee of WEST HILLS HOSPITAL did not re-evaluate ROBERT A. GRANT's surgical privileges.

"67. The records of Gail D. Kahn, admitted to WEST HILLS HOSPITAL on or about the year of 1969 were not reviewed by the records committee.

"75. No committee of the WEST HILLS HOSPITAL medical staff has reviewed the records of the March 25, 1975 admission of Ephraim Dockter.

"77. In 1970, WEST HILLS HOSPITAL administration files pertaining to ROBERT A. GRANT do not contain any recommendations or suggestions that the executive committee investigate the hospital practices of ROBERT A. GRANT, M.D.

"88. The WEST HILLS HOSPITAL administration files of 1970 pertaining to ROBERT A. GRANT, M.D., contained no note or memorandum by the administrator to the governing body concerning the incidents of joint malpractice suits involving WEST HILLS HOSPITAL and ROBERT A. GRANT, M.D.

"99. In 1970, there was no written record that the WEST HILLS HOSPITAL Administrator requested the medical staff to re-evaluate ROBERT A. GRANT's staff privileges.

"110. In 1970, there is no written record that the WEST HILLS HOSPITAL Administrator requested the medical staff to re-evaluate ROBERT A. GRANT's staff privileges because of the number of malpractice suits involving the doctor and WEST HILLS HOSPITAL.

"125. ADMIT OR DENY that the medical records committee did not review the charts of any of the cases of the plaintiffs set forth in Request for Admission No. 121.*" Footnote "*" states in part: "Many of the Requests for Admission are repeated for the years 1971-1980, or similar blocks of years. . . ."

[8]At oral argument, counsel for Hospital stated that Hospital agreed to inform petitioner whether or not Dr. Grant was evaluated, without conceding that section 1157 does not apply. However, Hospital would answer only the most general question and would not reply as to review by each committee or review during a specific year.

were not reviewed by the records committee." There is no doubt that that request seeks to determine the factual content of a medical committee meeting and is excluded from discovery under section 1157.

However, some requests for admission just as clearly go only to the question of whether or not Dr. Grant was evaluated. For example, request for admission number 12 states: "In 1970, ROBERT A. GRANT, M.D., was not reevaluated for staff privileges."

Still other requested information relates to materials that the referee thought might be "generated by hospital committees" and therefore privileged under 1157. For example, request for admission number 77 states: "In 1970, WEST HILLS HOSPITAL administration files pertaining to ROBERT A. GRANT do not contain any recommendations or suggestions that the executive committee investigate the hospital practices of ROBERT A. GRANT, M.D."

*Matchett v. Superior Court* (1974) 40 Cal.App.3d 623, 628-629 [115 Cal.Rptr. 317], is the seminal case interpreting section 1157. In an action alleging injury both from negligent treatment by the doctor and from the "hospital's negligence in admitting and retaining the doctor on its staff without adequate inquiry into or controls over his competence" (*id.*, at p. 626), plaintiff/patient sought the hospital's "personnel and/or staff file," the files of the credentials committee of the hospital staff, its executive committee, its tissue committee and its records committee. The court in *Matchett* recognized that section 1157 precludes discovery of committee investigations by a malpractice plaintiff but observed "[t]he trial court should have inquired into the existence of a hospital administration file concerning the doctor and, if such a file existed, should have permitted its inspection, excluding any portions which reflected the proceedings of staff committees conforming to the specifications of the immunity statute." (*Id.*, at p. 628.)

In reaching that conclusion, the court in *Matchett* explored the statute's objective: "In an accredited hospital, the organized medical staff is responsible to the hospital governing body for the quality of in-hospital medical care; it evaluates the qualifications of applicants and holders of staff privileges; it recommends appointment, reappointment, curtailment and exclusion from staff privileges; it provides peer group methods for reviewing basic medical, surgical and obstetrical functions. [Citations.] When medical staff committees bear delegated responsibility for the competence of staff practitioners, the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical skills and their objectivity in regulating staff privileges. Although composed

of volunteer professionals, these committees are affected with a strong element of public interest.

"California law recognizes this public interest by endowing the practitioner-members of hospital staff committees with a measure of immunity from damage claims arising from committee activities. [Citations.] █ Evidence Code section 1157 expresses a legislative judgment that the public interest in medical staff candor extends beyond damage immunity and requires a degree of confidentiality. It was enacted in 1968 in apparent response to this court's decision in *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84]. There we sustained a malpractice plaintiff's claim to discovery of hospital staff records which might reveal information bearing upon the competence of the defendant doctor. In *Kenney* only the doctor was a defendant, not the hospital. Nevertheless, a public policy question was raised by malpractice plaintiffs' access to medical files revealing committee investigations and appraisals of their peers. Section 1157 was enacted upon the theory that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity. [Fn. omitted.] It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality.

"This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital [fn. omitted] or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." (*Id.*, at pp. 628-629.)

The court in *Schulz* v. *Superior Court* (1977) 66 Cal.App.3d 440 [136 Cal.Rptr. 67], reiterated the rule from *Matchett* that the exception to section 1157[9] does not permit discovery by plaintiffs in malpractice actions. "To

---

[9]Section 1157 provides in part: "The prohibition relating to discovery or testimony shall not apply to the statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting, or to any person requesting hospital staff privileges . . . ."

The exception was applied in *Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809 [139 Cal.Rptr. 170], in an action by a group of doctors operating a department of pathology; they sued the hospital regarding termination of their contractual relationship, and the Court of Appeal denied a writ by the hospital that sought to have the superior court set aside its order compelling the production of certain documents by the hospital such as minutes, records, and tape recordings of staff committees and board meetings. (*Id.*, at p. 809.) The exception was also recognized in *Henry Mayo Newhall Memorial Hosp.* v. *Superior Court* (1978) 81 Cal.app.3d 626 [146 Cal.Rptr. 542], in which the court

declare that the immunity is to be set aside when either the staff doctor or the hospital are parties to the malpractice proceeding would not only achieve an absurd result, but would render sterile the immunity provisions of the statute." (*Id.*, at p. 445.) As in *Matchett,* the court in *Schulz* emphasized that section 1157 "applies only to records of and proceedings before medical investigative committees. It is conceivable that the records of the hospital administrative staff do not contain reference to proceedings of the medical advisory board and, to that extent, are not within the protection of section 1157." (*Id.*, at p. 446.) Since the record in *Schulz* did not reveal whether the court found each item of evidence requested, after review at an *in camera* hearing, to have been the "product of the medical advisory board proceeding," respondent superior court was directed to reconsider and act on those portions of the discovery motion directed only at hospital administration files "not resulting from the investigation conducted by the advisory board." (*Id.*, at p. 447.)

The court in *County of Kern* v. *Superior Court* (1978) 82 Cal.App.3d 396, 401 [147 Cal.Rptr. 248], recognized the remedy of an *in camera* hearing whereby the trial court can "excise from the file any part [of the administrator's file concerning any doctor involved in this case] derived from the work of a protected committee." (*Id.*, at p. 402.)

Petitioner acknowledges the interpretations in the above cases. However, she argues that the policy behind section 1157 should not preclude her requested discovery and that the policy enunciated in *Elam* v. *College Park Hospital, supra,* 132 Cal.App.3d 332 [183 Cal.Rptr. 156] mandates our granting her requested relief. The court in *Elam* reversed a summary judgment and established that a hospital could be liable for "corporate negligence" for "negligently screening the competency of its medical staff to insure the adequacy of medical care rendered to patients at its facility." (*Id.*, at p. 346.) California thereby joined the courts of other jurisdictions in recognizing liability of a hospital for staff members who are not necessarily employees or agents of the hospital. (*Id.*, at pp. 345-346.) The court recognized the policy of "encouraging hospitals to actively oversee the competence of their medical staff and the quality of the medical treatment ren-

---

held that a hospital does not waive its section 1157 immunity by filing a transcript of its staff committee hearing in an unrelated administrative mandamus procedure in which the defendant doctor contests the hospital's decision suspending his staff privileges. In doing so, the court recognized the doctor's right as part of the administrative mandamus proceeding and related judicial review to have access to the transcript, although patient in the malpractice setting does not.

dered on their premises, while providing victims with an additional avenue for relief." (*Id.*, at p. 347.)[10]

The cases following *Elam* in which the application of section 1157 has been addressed have not narrowed the scope of section 1157 in light of *Elam.* (*Snell* v. *Superior Court* (1984) 158 Cal.App.3d 44, 48-49 [204 Cal.Rptr. 200]; *West Covina Hospital* v. *Superior Court* (1984) 153 Cal.App.3d 134, 138 [200 Cal.Rptr. 162] (vacating the trial court's order compelling the hospital to produce its medical staff committee attendance records and other documents); *Mt. Diablo Hospital Medical Center* v. *Superior Court* (1984) 158 Cal.App.3d 344, 347 [204 Cal.Rptr. 626].)[11]

Finally, in March 1985, Division Two of this court held that a doctor present at one of the committee meetings cannot "waive the privilege" of section 1157 and testify as to discussions of that committee. (*West Covina Hospital* v. *Superior Court (Tyus)* (1985) 165 Cal.App.3d 794 [211 Cal.Rptr. 677].) The court observed that "few physicians will candidly participate, or participate at all, in a committee meeting if the confidentiality of that meeting can be breached at the whim of any person attending." (*Id.*, at p. 797.)

The referee in the case before us conducted a diligent and thorough hearing regarding the requested discovery. In fact, he ordered discovery of much of the information sought by petitioner. However, under the law as enunciated in the above cases, he may have unnecessarily restricted some discovery from administrative files.[12] ■ "The burden of establishing entitlement to nondisclosure rested with the party resisting discovery, not

---

[10]In light of its conclusion that the hospital generally owes such a duty, the court in *Elam* found papers pertaining to the motion for summary judgment to be replete with triable issues of fact. "For example, whether Hospital should have conducted an investigation through its peer review committee upon notice of the *Bailey* case [another malpractice case filed against the same podiatrist]? Whether the committee had conducted its periodic reviews of [the podiatrist] in a nonnegligent manner? Assuming a review was made after notice of the *Bailey* case, was it performed in a nonnegligent manner? If it had been made in a careful and proper manner, would the committee have recommended revocation or suspension of [the podiatrist's] staff privileges?" (*Id.*, at p. 348.) We find no mention of section 1157 in the *Elam* case. The court's attention may not have been drawn to that statute when the above questions were formulated.

[11]The Court of Appeal in *Mt. Diablo, supra,* 158 Cal.App.3d 344, issued a writ ordering the trial court to vacate its order compelling further answers and to reconsider its decision. At the time of reconsideration, "the court will be required to determine whether, as to each question asked, petitioner has sufficiently established that an answer cannot be given without divulging the 'proceedings [or] the records' of the medical staff committees to which section 1157 refers." (*Id.*, at pp. 347-348.)

[12]For example, regarding request for admission number 77, the referee decided that "[s]ince this request *may* include documents generated by the hospital executive committee, . . . it seeks privileged material and . . . defendants need not respond to it." (Italics added.)

the party seeking it. [Citation.]" (*Matchett* v. *Superior Court, supra,* 40 Cal.App.3d at p. 627.) The cases clearly allow information from administrative files that does not result from investigations conducted by the committees. (*Saddleback Community Hospital* v. *Superior Court* (1984) 158 Cal.App.3d 206, 209 [204 Cal.Rptr. 598].) That the request "*may include* materials generated by hospital committees" (italics added) is not enough. Hospital, which is resisting discovery in trying to show entitlement to nondisclosure, must sufficiently establish "that an answer cannot be given without divulging the 'proceedings [or] the records' of the medical staff committees to which section 1157 refers." (*Mt. Diablo Hospital Medical Center* v. *Superior Court, supra,* 158 Cal.App.3d at p. 348.) The trial court should review the discovery requests with this standard in mind.

■ We next turn to the more difficult issue of whether petitioner can discover the fact of evaluation or nonevaluation of Dr. Grant by the relevant committees. None of the cases cited above directly addresses this issue. The policy considerations enunciated in those cases, however, are instructive. ■ The Legislature intended through section 1157 to encourage full and free discussions in the hospital committees in order to foster health care evaluation and improvement. The unrestricted nature of the discussion is not to insulate participants from the scrutiny of the staff members being reviewed; the exceptions in section 1157 do not prohibit discovery by "any person requesting hospital staff privileges." It is not the opinions of the participants vis-à-vis their colleagues that are protected under section 1157, since their colleagues under certain circumstances can discover the criticisms of their peers.

■ The Legislature must have sought to impose confidentiality on committee proceedings in order to allow committee members to be able to admit and thereafter deal with the faults of staff members without risking an adverse impact from the admission. Viewing section 1157 in that light, the holdings in the cases cited above are consistent with our conclusion that a medical malpractice plaintiff should be able to discover whether or not defendant Hospital evaluated its physicians. This result stimulates the evaluation process without permitting penetration of the content of committee discussions. It is our view that such information does not constitute either "proceedings" or "records"[13] under the policy the Legislature has evidenced in enacting section 1157.

To be sure, permitting a "yes" or "no" answer to a question directed to the fact of evaluation only encourages hospitals to conduct evaluations. If

---

[13]Because petitioner does not seek "testimony," we need not decide if the fact of evaluation or nonevaluation constitutes "what transpired" at the committee meetings. Section 1157 provides in part: ". . . no person in attendance at a meeting of any such committee shall be required to testify as to *what transpired* thereat." (Italics added.)

no evaluation has occurred, there is nothing to protect under section 1157; and petitioner acquires information that may be valuable in her lawsuit against Hospital. (See Loveridge and Kimball, *Hospital Corporate Negligence Comes to California: Questions in the Wake of Elam v. College Park Hospital* (1983) 14 Pacific L.J. 803, 826-828.) If an evaluation has occurred, section 1157 protects the committees and hospital from further disclosure.

The trial court erred in not permitting discovery of the fact of evaluation or nonevaluation.

III. ■ *The Trial Court Erred in Denying Discovery of Whether or Not Hospital Required Medical Malpractice Insurance Coverage of Dr. Grant*

Petitioner contends that she should be able to discover whether Hospital enforced its bylaw that required applicants for staff membership to have current malpractice coverage. She sought to discover if Hospital inquired of Dr. Grant if he was insured for malpractice.

We reject the reasoning of the court in *Snell, supra,* 158 Cal.App.3d at pages 50-51, regarding discovery of whether a hospital requires its physicians to carry malpractice insurance.[14] In a suit based on hospital's negligence in screening and evaluating a physician, it is relevant to discover whether Hospital enforced its own bylaw requiring malpractice coverage. The physician's poor record of malpractice claims may be the cause of lack of coverage. Failure of Hospital to inquire as to malpractice coverage, when its own rules require the coverage, demonstrates a willingness to ignore that the physician is not coverable for reasons that may go to the physician's medical competency. This failure by the Hospital may indicate conduct contrary to Hospital's duty under *Elam, supra,* 132 Cal.App.3d 332.

---

[14]The *Snell* court found no abuse of discretion in denying discovery of this information. "In our view, the question of whether a hospital is negligent in investigating a physician's background and competence, and in maintaining adequate evaluation procedures, is, at best, only tenuously connected to the question of whether it requires its physicians to carry malpractice insurance. By casuistically claiming that a failure to require physicians to carry malpractice coverage is a breach of duty of care, petitioner is obfuscating the theory on which her suit is assertedly proceeding. The duty of care owed to patients is to admit and screen doctors in a non-negligent fashion, and to provide for ongoing evaluation procedures. That has palpably little to do with whether insurance is required as a condition of being a hospital staff physician or acquiring hospital privileges, a fact implicitly recognized by the Legislature; it has determined that whether a hospital should require malpractice insurance as a condition of medical staff membership is an entirely discretionary decision. [Citations.] We find no abuse in the denial of petitioner's motion to compel answers to the interrogatories. [Citations.]" (158 Cal.App.3d at pp. 50-51.)

Unless the inquiry goes to information protected by section 1157 or other reasons, it is relevant information and petitioner should be permitted such discovery.

### DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order to the extent it shall reconsider and act upon those portions of petitioner's discovery motion directed at (1) the fact of evaluation or nonevaluation of Robert A. Grant, M.D., with directions to grant discovery of those items, (2) the contents of Hospital's administrative file not clearly containing proscribed materials, with directions to require real parties in interest to establish that the answers cannot be given without divulging the proceedings or records of the medical staff committees to which Evidence Code section 1157 refers, and (3) Hospital's inquiry as to Dr. Grant's malpractice coverage. In all other respects, the petition is denied.

Danielson, J., and Goldin, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.