[L.A. No. 32083. May 29, 1986.]

WEST COVINA HOSPITAL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
TERRY JO TYUS et al., Real Parties in Interest.

**COUNSEL**

Hagenbaugh & Murphy, Horvitz & Levy, Horvitz, Levy & Amerian, Ellis J. Horvitz, David M. Axelrad, Barry R. Levy and David S. Ettinger for Petitioner.

Hassard, Bonnington, Rogers & Huber, David E. Willett and Catherine I. Hanson as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Shan K. Thever, Harney, Wolfe, Pagliuso, Shaller & Carr, David M. Harney and Arthur E. Schwimmer for Real Parties in Interest.

## OPINION

**BROUSSARD, J.**—The issue presented in this writ proceeding is whether Evidence Code section 1157 precludes a hospital medical review staff committee member from testifying voluntarily about proceedings of the committee.

Plaintiff in her individual capacity and as guardian ad litem for her minor daughter brought a medical malpractice action alleging negligence by a surgeon.[1] Plaintiff also alleged negligence by the West Covina Hospital in granting surgical privileges and retaining the surgeon on its medical staff. Plaintiff proposes to call as a witness at trial a physician, Dr. Anwar, who served on a medical staff committee of the hospital when the committee was evaluating the allegedly negligent surgeon. Dr. Anwar is to testify about specific details of the evaluation. The record does not show whether the testimony will relate to evaluations before or after the operation or both. Over objections by the hospital, the court ruled that Dr. Anwar could testify so long as he does so voluntarily. The court stated that a committee member may waive the exclusion of section 1157 and may testify to the entire proceeding of a medical staff committee provided patients' names were not disclosed.[2]

The hospital then sought a writ of mandate to compel the trial court to vacate its order and to enter an order granting the hospital's motion to exclude the testimony. The Court of Appeal, Second Appellate District, Division Two granted the writ, and we granted review.

In *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156], it was held that a hospital may be liable in damages to a patient in a malpractice case for negligent selection or retention of medical staff.

Evidence Code section 1157 provides in part that neither the proceedings nor the records of hospital medical staff committees shall be subject to discovery, and under subdivision (b) "no person in attendance at a meeting of any of those committees shall be *required to testify* as to what transpired at that meeting." (Italics added.) Exceptions to the prohibition are made for statements made by parties to litigation when the subject matter

---

[1] The allegedly negligent surgeon settled for an amount in excess of $650,000. He died during the pendency of the action.

[2] Before the Court of Appeal, plaintiff at times seems to have taken the position that she only wanted Dr. Anwar's testimony as to what he said at the staff committee meetings. However, it now appears that her position is that the doctor may testify to the entire proceedings.

of the litigation is reviewed at the meeting, for any person requesting hospital staff privileges, and for bad faith actions against insurers for refusal to settle.[3] The section has been repeatedly amended in recent years to expand its applicability to committees other than hospital medical staff committees, but the amendments have not changed the language involved here. (Stats. 1975, ch. 674, § 2; Stats. 1983, ch. 289, § 3; Stats. 1983, ch. 1081, § 2.5; Stats. 1985, ch. 725, § 1.) In 1985, the section was divided into subdivisions.

■ We give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473]; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155]; *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) ■ A provision that a member of a hospital medical staff committee may not be "required" to testify is not the same as either providing that he may not testify or that the hospital or committee shall have a privilege to preclude testimony.

In other sections of the Evidence Code, in the same chapter as section 1157, the Legislature has shown that it is well aware of the distinctions relating to discovery, privileges, and admissibility of evidence. Thus, cer-

---

[3] Evidence Code section 1157 provides: "(a) Neither the proceedings nor the records of organized committees of medical, medical-dental, podiatric, registered dietitian, psychological, or veterinary staffs in hospitals having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or medical or dental review or dental hygienist review or chiropractic review or podiatric review or registered dietitian review or veterinary review committees of local medical, dental, dental hygienist, podiatric, dietetic, veterinary, or chiropractic societies, or psychological review committees of state or local psychological associations or societies having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery.

"(b) Except as hereinafter provided, no person in attendance at a meeting of any of those committees shall be required to testify as to what transpired at that meeting.

"(c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits.

"(d) The prohibitions in this section do not apply to medical, dental, dental hygienist, podiatric, dietetic, psychological, veterinary, or chiropractic society committees that exceed 10 percent of the membership of the society, nor to any of those committees if any person serves upon the committee when his or her own conduct or practice is being reviewed.

"(e) The amendments made to this section by Chapter 1081 of the Statutes of 1983, or at the 1985 portion of the 1985-86 Regular Session of the Legislature, do not exclude the discovery or use of relevant evidence in a criminal action."

tain evidence is made inadmissible for certain purposes but there is no limitation on discovery, and other evidence is subject to discovery and admissible subject to privileges. (See Evid. Code, § 1150 et seq.) The care in drafting the provisions in the chapter entitled "Other Evidence Affected or Excluded by Extrinsic Policies" with reference to privilege, discovery, and admissibility reinforces the ordinary conclusion that the Legislature, in providing that a hospital staff committee member may not be "required" to testify, "'knew what it was saying and meant what it said.'" (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227].)

The conclusion that section 1157 excludes involuntary testimony but not voluntary testimony is also supported by the principle that privileges should be narrowly construed since they prevent the admission of relevant and otherwise admissible evidence and may obstruct the attainment of justice. (See e.g., *United States* v. *Nixon* (1974) 418 U.S. 683 [41 L.Ed.2d 1039, 94 S.Ct. 3090]; *People* v. *McGraw* (1983) 141 Cal.App.3d 618, 622 [190 Cal.Rptr. 461]; but compare *Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 769 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214] [privilege may be implied from a statute].)

The hospital relies upon the language of subdivision (c) of section 1157, the "prohibition relating to discovery or testimony" in urging that there is an ambiguity in the section. However, there is no ambiguity. The prohibition relating to testimony is obviously the prohibition against requiring testimony.

■ Because the critical language of the statute, "required to testify," is clear, we will decline to follow it only when it would inevitably frustrate the manifest purposes of the legislation as a whole or would lead to absurd results. (*People* v. *Belleci, supra,* 24 Cal.3d 879, 884; *Younger* v. *Superior Court (Mack)* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

Thus, the burden on the hospital, in claiming that the quoted phrase should be read to make voluntary testimony inadmissible, is a heavy one. The hospital has not met the burden.

To the contrary, prohibiting involuntary testimony serves a fundamental legislative purpose. The obvious general purpose of section 1157 is to improve the quality of medical care in the hospitals by the use of peer review committees. Accomplishment of the purpose requires that doctors be recruited to serve on the committees. If doctors who serve on such committees

were subject in malpractice cases to the burdens of discovery and involuntary testimony on the basis of their committee work, the evidentiary burdens could consume large portions of the doctors' time to the prejudice of their medical practices or personal endeavors and could cause many doctors to refuse to serve on the committees. It is certainly reasonable for the Legislature to conclude that to encourage doctors to serve on peer review committees they should be exempt from compelled discovery and required testimony as to their committee work. On the other hand, when a doctor volunteers to testify, he has concluded that he is willing to bear the time burdens; and the Legislature could properly conclude that exclusion of voluntary testimony was not necessary to encourage participation in the peer review program.

Several legislative policies and concerns are involved in determining the availability of the records and proceedings of peer review committees in judicial proceedings. These policies and concerns were described by Justice Friedman in *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623, 628-630 [115 Cal.Rptr. 317]. The language has been quoted in full and in part or referred to in numerous cases involving discovery. (*Brown* v. *Superior Court* (1985) 168 Cal.App.3d 489, 498 et seq. [214 Cal.Rptr. 266]; *Mt. Diablo Hospital Medical Center* v. *Superior Court* (1984) 158 Cal.App.3d 344, 347 [204 Cal.Rptr. 626]; *Saddleback Community Hospital* v. *Superior Court* (1984) 158 Cal.App.3d 206, 208 [204 Cal.Rptr. 598]; *Snell* v. *Superior Court* (1984) 158 Cal.App.3d 44, 49 [204 Cal.Rptr. 200]; *West Covina Hospital* v. *Superior Court* (1984) 153 Cal.App.3d 134, 138-139 [200 Cal.Rptr. 162]; *Henry Mayo Newhall Memorial Hosp.* v. *Superior Court* (1978) 81 Cal.App.3d 626, 632-633, fn. 6 [146 Cal.Rptr. 542]; *Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809, 813-814 [139 Cal.Rptr. 170]; *Schulz* v. *Superior Court* (1977) 66 Cal.App.3d 440, 444-445 [136 Cal.Rptr. 67].)

■ The discussion in *Matchett* and the subsequent cases takes on added importance because of the well-established rule that when, as here, the Legislature amends a statute without altering portions of the provision that have been judicially construed, the Legislature is presumed to have been aware of and acquiesced in the prior judicial construction. (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].)

In *Matchett,* the court stated: "In an accredited hospital, the organized medical staff is responsible to the hospital governing body for the quality of in-hospital medical care; it evaluates the qualifications of applicants and holders of staff privileges; it recommends appointment, reappointment, curtailment and exclusion from staff privileges; it provides peer group methods

for reviewing basic medical, surgical and obstetrical functions. [Citations.] When medical staff committees bear delegated responsibility for the competence of staff practitioners, the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical skills and their objectivity in regulating staff privileges. Although composed of volunteer professionals, these committees are affected with a strong element of public interest.

"California law recognizes this public interest by endowing the practitioner-members of hospital staff committees with a measure of immunity from damage claims arising from committee activities. (Civ. Code, § 43.7; *Ascherman* v. *San Francisco Medical Society* (1974) 39 Cal.App.3d 623 [114 Cal.Rptr. 681].) Evidence Code section 1157 expresses a legislative judgment that the public interest in medical staff candor extends beyond damage immunity and requires a degree of confidentiality. It was enacted in 1968 in apparent response to this court's decision in *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84]. There we sustained a malpractice plaintiff's claim to discovery of hospital staff records which might reveal information bearing upon the competence of the defendant doctor. In *Kenney* only the doctor was a defendant, not the hospital. Nevertheless, a public policy question was raised by malpractice plaintiffs' access to medical files revealing committee investigations and appraisals of their peers. Section 1157 was enacted upon the theory that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity.[4] It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality.

"This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital[5] or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing

---

"[4]Literally, section 1157 establishes an immunity from discovery but not an evidentiary privilege in the sense that medical staff records are excluded from evidence. It stands in contrast with Evidence Code section 1156, which expressly subjects to discovery hospital staff studies made for the purpose of reducing morbidity or mortality, but excludes them as evidence. Because discoverability is our only concern, we need not decide whether section 1157 forms an exclusionary rule barring hospital staff records as evidence."

"[5]The appellate courts of California have not yet considered tort liability of a hospital for negligent selection or retention of staff practitioners. (See *Joiner* v. *Mitchell County Hospital Authority* (1971) 125 Ga.App. 1 [186 S.E.2d 307, 51 A.L.R.3d 976], affd. 229 Ga. 140 [189 S.E.2d 412]; *Darling* v. *Charleston Community Memorial Hospital* (1965) 33 Ill.2d 326 [211 N.E.2d 253, 14 A.L.R.3d 860]; Annots. 51 A.L.R.3d 981, 14 A.L.R.3d 873; see also, 21 Hastings L.Rev. 1 (1969)."

public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence.

"The statute, then, is aimed directly at malpractice actions in which a present or former hospital staff doctor is a defendant. The statutory exception for 'any person requesting hospital staff privileges' cannot be construed as plaintiff contends. To all appearances the exception was designed to set the immunity to one side and to permit discovery in suits by doctors claiming wrongful or arbitrary exclusion from hospital staff privileges. [Citations.]" (*Matchett* v. *Superior Court, supra,* 40 Cal.App.3d at pp. 628-630.)

■ *Matchett* reflects the various concerns the Legislature balanced in adopting section 1157. Seeking to promote the voluntary participation of professionals in the peer review process so as to improve the quality of in-hospital medical care, the Legislature sought to promote the effectiveness of the committees by protecting the practitioner-members and by providing a measure of confidentiality so as to promote candor and objectivity. However, as *Matchett* recognizes, there are competing concerns such as the interests of victims of medical malpractice. In addition, by providing exceptions from the prohibitions of compelled discovery and required testimony, the Legislature has recognized that the competing concerns in the designated circumstances take precedence over its intent to promote candor by confidentiality.[6]

■ Exclusion of compelled testimony alone serves the purposes and has the effects enumerated in *Matchett*. Thus, exclusion of compelled testimony will promote voluntary participation and candor and frankness of committee members. To this extent the Legislature has provided a measure of confidentiality which no doubt will seriously jeopardize and prevent recovery by many malpractice plaintiffs.

Extending the prohibition to voluntary testimony would further promote candor and frankness and would prevent recovery by additional plaintiffs. However, such extension is not essential to the promotion of the legislative purposes, and it is for the Legislature to determine how far to go in promoting its various goals. The Legislature has recognized in subdivisions (c), (d) and (e) that confidentiality must give way to the need for evidence in the specified circumstances. We have no reason to assume that the Leg-

---

[6]Because the prohibition relating to discovery and testimony is not applicable when a doctor sues to obtain staff privileges, it has been stated that the goal of candor is not furthered by the prohibition. (Goldberg, *The Peer Review Privilege: A Law in Search of a Valid Policy* (1984) 10 Am. J. L. & Med. 151, 155 et seq.) However, we must accept the legislative judgment that candor is promoted.

islature was not carefully balancing the need for confidentiality against the need for evidence in subdivision (b) of the section as well, and there is no justification for courts to strike a different balance.[7]

We conclude that Evidence Code section 1157, subdivision (b) prohibits required testimony but does not preclude voluntary testimony. The Court of Appeal shall vacate its writ of mandate and deny the petition for a peremptory writ.

Bird, C. J., Mosk, J., and Reynoso, J., concurred.

**PANELLI, J.**—I respectfully dissent. The majority's reasoning, that in prohibiting compelled testimony, subdivision (b) of Evidence Code section 1157[1] authorizes voluntary testimony, ignores both the purpose of the statute and the background of decisional law against which it was enacted. Their conclusion rests on the dual premise that the statutory language is clear and unambiguous, and that exclusion of compelled testimony alone serves the legislative purpose underlying the statute. In my view, neither premise withstands scrutiny.

Section 1157 was enacted in response to two decisions: *Brown* v. *Superior Court* (1963) 218 Cal.App.2d 430 [32 Cal.Rptr. 527], and *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84]. In *Brown,* the Court of Appeal held that the substance of discussions of a county medical society committee, relating to a malpractice claim against a member of the society, were subject to the "work product" discovery privilege. *Kenney* allowed discovery of the records of disciplinary proceedings which related to a staff doctor who had been named as defendant in a medical malpractice

---

[7]The dissenting opinion erroneously strikes a different balance than the Legislature. That opinion states: "Quite simply, the Legislature . . . did not anticipate the admission of voluntary testimony in view of the manifest purpose of this statute and for that reason failed to expressly prohibit such testimony, thereby leaving the statute ambiguous on this point." That simplification is decisive of the issue here.

The language used by the Legislature "no person . . . shall be required to testify" is not reasonably susceptible to an interpretation to prohibit volunteered testimony.

Were we to assume, as the dissenting opinion does, that the Legislature did not anticipate the admission of voluntary testimony, we should hold the testimony admissible. We are dealing with a statute which excludes relevant evidence and may obstruct the administration of justice. Because it has not been shown that admission of voluntary testimony would inevitably frustrate the manifest purposes of the legislation or lead to absurd results (*People* v. *Belleci, supra,* 24 Cal.3d 879, 884), we should not speculate as to the result the Legislature would have reached if it had contemplated the possibility of voluntary testimony. When the Legislature does contemplate the possibility of voluntary testimony in view of the purpose of the statute, it may or may not agree with the dissent that voluntary testimony should be excluded. We should leave that choice to the Legislature.

[1]All further statutory references are to the Evidence Code unless otherwise indicated.

action; however, with respect to disclosures made at the committee proceedings, it reaffirmed the *Brown* "work-product" privilege.

Section 1157 reaffirms the *Brown* holding that medical society review committee proceedings cannot be discovered; extends that exclusion to proceedings of hospital medical staff review committees; nullifies the *Kenney* holding that the records of such review committees are discoverable; and creates for the protected material an absolute immunity from discovery, rather than the conditional work-product privilege recognized in *Brown* and *Kenney.*

However, with respect to evidentiary use of the nondiscoverable matter, section 1157 is facially ambiguous. The statute is silent concerning voluntary testimony. Subdivision (b) provides that no one in attendance at a meeting of the specified committees "shall be required to testify" as to what transpired at that meeting. To say, as the majority do, that in prohibiting compelled testimony the Legislature consciously intended to permit voluntary testimony is, in my view, to give subdivision (b) more meaning than its terms will bear or its purpose permit. A more reasonable view is that in prohibiting compelled testimony the Legislature was addressing the specific concern expressed in *Brown, supra,* that the purpose of the medical society committee will be defeated if anyone present "must disclose" the substance of the discussion (218 Cal.App.2d at p. 443) and that "requiring such disclosure" would put an end to such meetings (*ibid.*). Quite simply, the Legislature, like the court in *Brown,* did not anticipate the possibility of voluntary testimony in view of the manifest purpose of this statute and for that reason failed to expressly prohibit such testimony, thereby leaving the statute ambiguous on this point.

Subdivision (c), in contrast to subdivision (b), refers without limitation to "[t]he prohibition relating to discovery or testimony."[2] In failing to modify "testimony," but rather, treating as equivalent the prohibitions against discovery and against testimony, this phrase gives rise to the inference that all testimony, like all discovery, is prohibited. Moreover, subdivision (e) supports this inference. That subdivision specifies that the 1983 and 1985 amendments to the section[3] do not exclude "use of relevant evidence" in criminal proceedings. This caveat suggests that the use in civil proceedings of relevant evidence within the ambit of the statute is barred.

---

[2]Subsequently enacted statutes, extending the provisions of section 1157 to additional committees, likewise refer without limitation to "the prohibition relating to discovery or testimony provided by Section 1157." (§§ 1157.5, 1157.7, see also § 1157.6.)

[3]The 1983 amendment extended the provisions of section 1157 to podiatric and registered dietician review committees (Stats. 1983, ch. 1081, § 2.5, p. 3865), and the 1985 amendment extended them to psychological review committees (Stats. 1985, ch. 725, § 1).

"[T]he object of all construction of statutes is to ascertain and give effect to the intention of the legislature. [Citation.] In the analysis of statutes for the purpose of finding the legislative intent, regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments. [Citation.] While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language. [Citation.]" (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526]; accord, *Highland Ranch* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 858-859 [176 Cal.Rptr. 753, 633 P.2d 949].) Further, "where a statute is susceptible of different constructions, one leading to mischief or absurdity and the other consistent with justice and common sense, the latter will be adopted. [Citation.]" (*Schulz* v. *Superior Court* (1977) 66 Cal.App.3d 440, 446 [136 Cal.Rptr. 67].)

In *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623 [115 Cal.Rptr. 317], the same court that decided *Brown, supra,* and *Kenney, supra,* considered the purpose and effect of section 1157. Commenting first on the function of hospital medical staff committees charged with responsibility for the competence of staff practitioners, the court stated, "the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical skills and their objectivity in regulating staff privileges. Although composed of volunteer professionals, these committees are affected with a strong element of public interest." (*Id.,* at p. 628.)

As the *Matchett* court noted, section 1157 "expresses a legislative judgment that the public interest in medical staff candor extends beyond damage immunity and requires a degree of confidentiality. . . . It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality. [¶] This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital [fn.] or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence. [¶] The statute, then, is aimed directly at malpractice actions in which a present or former hospital staff doctor is a defendant." (40 Cal.App.3d at p. 629.)

The Courts of Appeal have uniformly held that the statutory exceptions set forth in subdivision (c) of section 1157[4] apply only to actions by phy-

---

[4]Subdivision (c) provides: "The prohibition relating to discovery or testimony does not

sicians claiming wrongful or arbitrary exclusion from hospital staff privileges and do not apply to a malpractice proceeding in which the doctor or the hospital has been made a party. (*Matchett* v. *Superior Court, supra,* 40 Cal.App.3d at pp. 629-630.) "[S]uch circumstances do not open to discovery hospital staff records containing medical committee investigation reports and peer appraisals." (*Schulz* v. *Superior Court, supra,* 66 Cal.App.3d at p. 446; see *Matchett, supra; West Covina Hospital* v. *Superior Court* (1984) 153 Cal.App.3d 134, 137-138 [200 Cal.Rptr. 162]; see also *Brown* v. *Superior Court* (1985) 168 Cal.App.3d 489, 500-501 [214 Cal.Rptr. 266]; cf. *Henry Mayo Newhall Memorial Hosp.* v. *Superior Court* (1978) 81 Cal.App.3d 626, 635 [146 Cal.Rptr. 542] ["benefits of section 1157 were [not] waived by reason of the fact that a complete transcript of the proceedings before the Hospital's committee, . . . were filed in [doctor's] administrative mandamus action"].)

Although the majority purport to recognize the legislative purpose articulated in *Matchett, supra,* they inexplicably and without any cited authority ascribe to the Legislature the additional purpose of encouraging voluntary participation on committees by relieving doctors of the "evidentiary burdens" in malpractice cases of "compelled discovery and required testimony." Exclusion of compelled testimony but not voluntary testimony, the majority assert, strikes a proper balance between the competing legislative concerns of promoting voluntary participation on peer review committees and frank discussion, on the one hand, and providing an injured plaintiff access to evidence, on the other. When a doctor volunteers to testify, the argument goes, exclusion of voluntary testimony "[is] not necessary to encourage participation in the peer review program," and any adverse effect such testimony may have on the confidentiality of the proceedings is outweighed by the plaintiff's need for evidence.

This argument sets up a false balance and ignores the primary purpose of section 1157—to assure the candor and honest evaluation of each staff member's competence essential to effective peer review, by removing the threat that the confidential discussion could be made public through medical malpractice litigation at the whim of any member of the review committee. To interpret section 1157 as do the majority would eliminate its utility in fostering open, frank and candid discussion. "The Legislature . . . sought to impose confidentiality on committee proceedings in order to allow committee members to be able to admit and thereafter deal with the faults of staff

---

apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits."

members without risking an adverse impact from the admission." (*Brown v. Superior Court, supra,* 168 Cal.App.3d at p. 501. See Comment, *Anatomy of the Conflict Between Hospital Medical Staff Peer Review Confidentiality and Medical Malpractice Plaintiff Recovery: A Case for Legislative Amendment* (1984) 24 Santa Clara L.Rev. 661, 671.) "In the Legislature's estimation, plaintiff access to records of peer review proceedings had a chilling effect on the proper performance of that review. [Fn.] The Legislature determined that the public interest in an elevated standard of medical care through medical staff peer review, outweighed the discovery needs of an individual plaintiff who, presumably, had other sources of information with which to support a cause of action[5]." (Comment, *supra.*)

To declare, as does subdivision (a), that certain matters are absolutely immune from discovery, yet to permit, as would the majority, their disclosure (i.e., "discovery") at trial, not only achieves an absurd result, but renders sterile the immunity provisions of the statute (cf. *Schulz v. Superior Court, supra,* 66 Cal.App.3d at p. 445) and makes illusory the confidentiality the statute seemingly provides.

I agree with Justice Beach's Court of Appeal opinion in this case where he stated: "[T]o permit unrestricted trial testimony about a medical staff committee meeting by any person at the meeting who happens to be willing to disclose the contents of what would otherwise be completely confidential proceedings . . . would punch a judicially created and legislatively unintended hole in the crucial shield of confidentiality provided to medical staff committees in medical malpractice actions. Such interpretation would directly contravene the vital policy underlying that immunity. . . . Candor and objectivity are essential to the effectiveness of these committees performing a vital role in monitoring and improving the quality of care in California hospitals. Yet, few physicians will candidly participate, or participate at all, in a committee meeting if the confidentiality of that meeting can be breached at the whim of any person attending."

---

[5]In a footnote at this point the Comment states that "[s]uch sources of information include the patient's own medical records, access to the treating physician for deposition and discovery of other past or pending malpractice claims, hospital manuals of policy and procedure, and hospital incident reports. [Citation.]" (Comment, *supra,* at p. 671, fn. 48.)

Section 1157, moreover, "does not shield from discovery administrative activities which, while related to, are independent of the investigative and evaluative activities of medical staff committees" (*Santa Rosa Memorial Hospital v. Superior Court* (1985) 174 Cal.App.3d 711, 726 [220 Cal.Rptr. 236]; see *Schulz v. Superior Court, supra,* 66 Cal.App.3d at p. 446), nor does it preclude discovery of records of nonqualifying hospital staff committees which may also yield useful information (see *Henry Mayo Newhall Memorial Hosp. v. Superior Court, supra,* 81 Cal.App.3d at p. 636). Although the substance of evaluation proceedings is nondiscoverable, a medical malpractice plaintiff is permitted to discover whether or not a defendant hospital evaluated the defendant-doctor. (*Brown v. Superior Court, supra,* 168 Cal.App.3d at pp. 501-502.)

In my judgment, it flies in the face of the manifest purpose of the statute to permit voluntary testimony concerning the protected proceedings. The purpose of the statute to encourage candid assessment without adverse consequences is equally thwarted whether disclosure is compelled or voluntary.

The majority's interpretation would, in my view, also have a serious adverse practical effect on the trial of the underlying action. Code of Civil Procedure section 2037 et seq. establish a discovery mechanism for expert witnesses who are to give trial testimony. The clear and obvious purpose of these provisions is to remove the element of surprise from the trial of lawsuits. Yet the majority's holding which permits the voluntary testimony of a peer review committee member at trial—evidence which they admit is not discoverable pretrial—will bring about the very result which section 2037 et seq. intended to avoid. Ironically, in most cases, the victim of the surprise expert testimony will be the plaintiff. As pointed out by amicus, "the Legislature could not have intended a result which stands in stark contrast to every discovery mechanism and so profoundly violates fundamental notions of fair play."

Consequently, unless and until the Legislature declares otherwise, I would construe section 1157 as creating an absolute bar to disclosure of the protected proceedings by either discovery or testimony, whether voluntary or compelled.[6] I would affirm the Court of Appeal's decision to grant the peremptory writ.

Grodin, J., and Lucas, J., concurred.

Petitioner's application for a rehearing was denied July 21, 1986. Grodin, J., Lucas, J., and Panelli, J., were of the opinion that the application should be granted.

---

[6]For discussion of the statutory flaws of section 1157 and a proposal for remedying them, see Comment, *supra*, 24 Santa Clara L.Rev. at pages 678-679. See also Loveridge and Kimball, *Hospital Corporate Negligence Comes to California: Questions in the Wake of Elam v. College Park Hospital* (1983) 14 Pacific L.J. 803.