Filed 6/17/15  Conner v. Cedars-Sinai Med. Center CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEONARD CONNER, | B248272 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC468427) |
| v. | |
| CEDARS-SINAI MEDICAL CENTER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Abraham Kahn, Judge.  Affirmed.

Mason & Associates, Reginald P. Mason; Robert M. Ball; Catherine K. Mason, for Plaintiff and Appellant.

Horvitz & Levy, David S. Ettinger and Dean A. Bochner; and La Follette, Johnson, De Haas, Fesler & Ames, Donald C. Fesler and Danielle S. Blauvelt, for Defendant and Respondent.

\* \* \* \* \* \*

Leonard Conner (plaintiff) sued the doctors who ordered an HIV test and the hospital at which they had staff privileges for not informing him of the positive test results that came in after he was discharged. The hospital moved for summary judgment, contending that its duty is to inform *doctors* of test results, not to inform *patients* (like plaintiff). After continuing the summary judgment hearing twice, the trial court refused a third continuance and granted summary judgment to the hospital. Plaintiff appeals. We conclude there was no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff was admitted to defendant Cedars-Sinai Medical Center (Cedars) on November 30, 2007 after feeling discomfort and some dizziness. While there, plaintiff was attended to by Dr. Shahriar Ghodshian (Dr. Ghodshian) and infectious disease specialist Dr. Vivian Shirvani (Dr. Shirvani). On December 1, 2007, plaintiff "consented," in writing, "to be tested to see whether [he] ha[s] been infected with the Human Immunodeficiency Virus (HIV) . . ." A test for HIV *antibodies* came back negative. A few days later, on December 4, 2007, a second test for the HIV *virus* (called an HIV PCR test) was conducted by Cedar's on-site laboratory. Plaintiff was discharged from Cedars on December 8, 2007. Three days later, the lab completed the test and "broadcast[] [the positive] test results to [plaintiff's] attending, treating and consulting doctors and physicians." Dr. Shirvani never relayed those results to plaintiff. It was not until plaintiff returned to Cedars nearly three years later, in August 2010, that he learned of the positive HIV PCR test result.

Plaintiff sued Cedars, Dr. Ghodshian, Dr. Shirvani and others. In the operative First Amended Complaint (FAC), plaintiff sued Cedars for (1) negligence, for not "hav[ing] in place a system that would have verif[ied] and confirm[ed] that its employees and/or privileged physicians actually notified [patients]" of positive test results, (2) negligent credentialing and monitoring of its staff physicians (including Dr. Ghodshian and Dr. Shirvani), and (3) constructive fraud and fraudulent concealment, for "suppress[ing], conceal[ing] [and] disregard for informing him" of the positive test results.

2

Nearly eight months after the FAC was filed, Cedars moved for summary judgment. Plaintiff thereafter added Dr. Shirvani as a Doe defendant, and filed a late opposition to the summary judgment motion. The trial court granted Cedars' summary judgment motion, finding no triable issues on any of plaintiff's claims. More specifically, the trial court found that Cedars did not violate any duty owed to plaintiff because "[a] hospital's duty of care is to transmit laboratory results to the physician who ordered the test." The trial court also ruled that there was "no competent evidence of [Cedars'] vicarious liability" for Dr. Shirvani's failure to relay the test results to plaintiff.

Following the entry of judgment, plaintiff timely appealed.

## DISCUSSION

### I. Preliminary issues

#### A. *Denial of continuance*

Plaintiff contends that the trial court should not have ruled on Cedars' summary judgment motion at all because, under Code of Civil Procedure, section 437c, subdivision (h), he was entitled to a continuance. "The decision whether to grant a continuance under . . . section 437c, subdivision (h), is reviewed for an abuse of discretion." (*Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 596.) There was no abuse here.

Plaintiff actually made three continuance requests.

His first motion was filed ex parte on September 21, 2012, and sought to postpone the summary judgment hearing so plaintiff could move to compel Cedars to respond to plaintiff's "Request for Production of Documents, Set Two; Special Interrogatories, Set One; Request for Admissions, Set Two; [and] Form Interrogatories, Set Two." Plaintiff propounded those requests on August 5, 2012, more than eight months after he filed the FAC and nearly two weeks after Cedars filed its summary judgment motion. The affidavit accompanying the motion did not detail the facts sought to be obtained in discovery or explain why they were material to the pending summary judgment motion. That same day, the parties met and conferred; Cedars agreed to respond, and the trial court continued the summary judgment hearing for six weeks—from October 3, 2012, to November 19, 2012.

3

The second motion to continue was filed ex parte on November 5, 2012. This was three weeks after Cedars responded, on October 12, 2012, to the written discovery requests plaintiff referenced in his first motion. In those responses, Cedars asserted that some of plaintiff's requests—namely, those pertinent to Dr. Shirvani's personnel file and her performance evaluations—were privileged. Plaintiff's continuance motion sought to postpone the summary judgment hearing so plaintiff could move to compel further responses to its written discovery requests and to depose Dr. Shirvani, who plaintiff first noticed for deposition on July 24, 2012 and renoticed on October 9, 2012. No affidavit of counsel was attached, and the trial court denied the motion to continue.

The third motion to continue was filed ex parte on November 19, 2012, the date set by the October continuance for the hearing on Cedars' summary judgment motion.[1] No affidavit accompanied this motion, although plaintiff's counsel filed a declaration in opposition to the motion for summary judgment, in which he stated that the employment documents and credentialing records regarding Dr. Shirvani—and over which Cedars asserted privilege—were critical to plaintiff's negligence claims. The trial court postponed the hearing for 10 days—until November 29, 2012—to give itself time to consider plaintiff's late-filed opposition to the summary judgment motion. At the November 29 hearing, the trial court declined to continue the matter further, "finding the absence of good cause, after long periods of lack of diligence in propounding discovery, and in moving to compel further responses, after prior, generous continuances, and well before [plaintiff's] counsel reportedly became ill" (in early November).

Code of Civil Procedure, section 437c, subdivision (h), provides in pertinent part: "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to

---

[1]     Plaintiff appears to have noticed additional ex parte motions for a continuance, but the record does not indicate that the trial court heard them (as plaintiff failed to appear many times after noticing those hearings).

4

permit affidavits to be obtained or discovery to be had or may make any other order as may be just."

The seemingly mandatory nature of such a continuance is triggered only if the "opposing party's declaration in support of [the] motion to continue . . . show[s] the following:  (1) '*Facts* establishing a *likelihood that converting evidence may exist* and *why* the information sought is *essential* to opposing the motion'; (2) 'The *specific reasons* why such evidence cannot be presented at the present time'; (3) 'An estimate of the *time* necessary to obtain such evidence'; and (4) 'The specific steps or procedures the opposing party intends to utilize to obtain such evidence.'" (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532; *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715 [delineating the first of the two requirements].)  The courts are divided on whether the opposing party must also show reasonable diligence—that is, "some justification for why such discovery could not have been completed sooner." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 257; compare *ibid* [requiring showing of diligence]; *Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 191 [same]; *A & B Painting & Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349, 356-357 [same]; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100 [same]; *FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 76; *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038 [same]; *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1428 [same] with *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 [diligence not relevant to continuance motion].)  Counsel's in-court argument can substitute for a declaration.  (*Taylor v. Jones* (1981) 121 Cal.App.3d 885, 890.)

Because the trial court granted plaintiff's first motion for a continuance and because his second motion was procedurally defective because unaccompanied by any affidavit or argument, only plaintiff's third motion is before us.  No declaration was filed with that motion either, but we will construe counsel's affidavit filed in opposition to the summary judgment motion as the affidavit in support of the motion.

The trial court's denial of the third continuance request was within its discretion. Were we to adopt the majority view that a showing of diligence is required, the trial court

5

did not err in concluding that plaintiff did not make that showing. Plaintiff waited more than eight months after filing the FAC, and until the day Cedars served its summary judgment motion, before noticing Dr. Shirvani's deposition or propounding any written discovery regarding her employment relationship with Cedars and her performance evaluations—which, as discussed below, are the only discovery requests that might have produced facts pertinent to the only claims not barred as a matter of law. Further, plaintiff waited weeks after obtaining allegedly unsatisfactory responses from Cedars in October 2012 before taking action, and consequently filed multiple ex parte motions on the days leading up to—and including—the date set for hearing the summary judgment motion. Tellingly, plaintiff never filed any motions to compel.

Were we to adopt the minority view that diligence is not a prerequisite to a continuance, our bottom line would be the same. (*Conway v. County of Tuolumne* (2014) 231 Cal.App.4th 1005, 1020, fn. 5 ["This court . . . reviews only the result, not the trial court's reasoning, which is irrelevant to appellate review following summary judgment."].) That is because a party opposing summary judgment is not entitled to a continuance if the information to be discovered during the continuance is not subject to discovery; this rule guards against continuances that would serve no purpose. (Accord, *Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 825 [denial of continuance must be prejudicial].)

The two categories of information that are pertinent to potentially viable causes of action and that plaintiff sought to discover during the continuances are privileged from discovery. The first category consists of the personnel records relating to the nature of Dr. Shirvani's employment relationship with Cedars. At the time plaintiff propounded this request, and now that plaintiff has settled with Dr. Shirvani, Dr. Shirvani was (and is again) a third party to this lawsuit. Third parties have a "fundamental right of privacy" in their personnel records that precludes their discovery "unless the litigant can show a compelling need for the particular documents and that the information cannot reasonably be obtained through depositions or from nonconfidential sources." (*Harding Lawson Assocs. v. Superior Court* (1992) 10 Cal.App.4th 7, 10; *Puerto v. Superior Court* (2008)

6

158 Cal.App.4th 1242, 1251 [same].)  Plaintiff has not made the requisite showing of unavailability through other means.

The second category consists of records relating to Cedars' performance evaluations of Dr. Shirvani's competence, which plaintiff seeks to support his claim that Cedars was negligent in hiring and retaining her as a staff physician.  This information is privileged by Evidence Code section 1157.  Among other things, section 1157 precludes discovery of "the records of organized committees of medical . . . staffs in hospitals or a peer review body . . . having the responsibility or evaluation and improvement of the quality of care rendered in the hospital . . ."  (Evid. Code, § 1157, subd. (a).)  This privilege does not preclude discovery of *whether* a hospital evaluates its physicians (*Brown v. Superior Court* (1985) 168 Cal.App.3d 489, 501-502 (*Brown*)), or the identity of the records regarding staff privileges (*Henry Mayo Newhall Memorial Hospital v. Superior Court* (1978) 81 Cal.App.3d 626, 636), but precludes discovery of the evaluations and records themselves (*Brown*, at p. 592; cf. Evid. Code, § 1157, subd. (c) [allowing discovery of staff privilege records to doctors who are "requesting hospital staff privileges," implying applicability of privilege to others seeking those records].)  This is a "clear, absolute immunity" to disclosure that applies even when the information would be otherwise relevant.  (*Snell v. Superior Court* (1984) 158 Cal.App.3d 44, 49 (*Snell*).)

Plaintiff argues that *Santa Rosa Memorial Hospital v. Superior Court* (1985) 174 Cal.App.3d 711 (*Santa Rosa Memorial Hospital*) and *Saddleback Community Hospital v. Superior Court* (1984) 158 Cal.App.3d 206 compel a different result because they preclude a hospital from asserting Evidence Code section 1157's privilege as to records created by a hospital's *administration* and later handed over to a staff review committee.  That is correct, but is irrelevant in this case given the performance evaluation records plaintiff seeks in this case are, as *Santa Rosa Memorial Hospital* noted, "so clearly within the exclusive sphere of a protected medical staff committee . . . that section 1157 can be found applicable without extensive judicial inquiry" or the in camera hearing plaintiff now requests.  (*Id.* at p. 727.)  Plaintiff also contends that the trial court has the power to

7

override section 1157's protection, but the case he cites—*Palay v. Superior Court* (1993) 18 Cal.App.4th 919, 933—deals with the right to privacy, and section 1157 creates a more "absolute" privilege. (*Snell*, *supra*, 158 Cal.App.3d at p. 49.)

For these reasons, the trial court did not abuse its discretion or otherwise transgress Code of Civil Procedure section 437c, subdivision (h), in denying plaintiff's third motion for a continuance.

### B. Evidentiary rulings

Plaintiff also argues that the trial court erred in sustaining objections to the late-filed declaration of Dr. Nelson Garcia in opposition to the summary judgment motion. More specifically, plaintiff contends that the trial court made an summary ruling on his evidentiary objections that is impermissible under *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255, and *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1448. The standard of review for evidentiary rulings appurtenant to a summary judgment motion is still unsettled (e.g., *Reid v. Google* (2010) 50 Cal.4th 512, 535 [noting split between abuse of discretion and de novo review]), but our independent review reveals no error.

In his declaration, Dr. Garcia opines that (1) plaintiff was injured by the delayed notification of the HIV PCR test results, (2) Dr. Shirvani breached her duty of care by not disclosing those results, (3) Cedars breached its duty of care by not notifying plaintiff of the results, and (4) Cedars negligently hired and monitored Dr. Shirvani because she was negligent by not obtaining plaintiff's consent to the HIV PCR test and by not informing him of the results. Cedars objected that these opinions lacked foundation, were speculative, and were conclusory. The trial court sustained those objections.

This was not a summary ruling because the trial court responded to the specific objections raised by Cedars; more to the point, the trial court's ruling in no way resembles the single-sentence ruling on 764 objections in *Nazir*. Further, the trial court's ruling was not an abuse of discretion because Dr. Garcia's opinion regarding a hospital's legal duty is beyond his medical competence and his opinion regarding Cedar's liability

8

for negligent hiring and monitoring is speculative (as it lacks any evidentiary basis, as discussed below, and for that reason is circular).

Ultimately, however, the trial court's exclusion of Dr. Garcia's declaration was not prejudicial. Even if we consider his declaration—which we will for purposes of this opinion—it does not alter the propriety of the trial court's summary judgment ruling.[2]

## II. Summary judgment

Summary judgment is appropriately granted "where 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (*Hartford Casualty Ins. Co. v. Swift Distrib., Inc.* (2014) 59 Cal.4th 277, 286 (*Hartford Casualty Ins. Co.*), quoting Code Civ. Proc., § 437c, subd. (c).) In other words, summary judgment is warranted where "the plaintiff has not established, and reasonably cannot be expected to establish, one or more elements of the cause of action in question." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 500.) "'"'We review the trial court's decision [granting summary judgment] de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' [Citation.]" (*Hartford Casualty Ins. Co.*, at p. 286.)

### A. Negligence

To survive summary judgment on a negligence claim, the plaintiff must establish a triable issue as to (1) "'a legal duty to use due care,'" (2) "'a breach of such legal duty,'" (3) causation, and (4) "'resulting injury.' [Citation.]" (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573.) Plaintiff seeks to

---

**2** Cedars separately argues that the trial court erred in sustaining plaintiff's objection to Dr. Neil Romanoff's declaration. Even if we were to consider this objection on its merits, the exclusion of Dr. Romanoff's declaration has no effect on our analysis of the trial court's summary judgment ruling and we will accordingly leave the trial court's ruling undisturbed.

9

hold Cedars liable for negligence on three theories: (1) direct liability for breaching a judicially recognized duty upon hospitals to implement a system for notifying patients of test results; (2) direct liability, under a negligence per se theory, based on breach of statutory duties to notify patients of test results; and (3) vicarious liability for Dr. Shirvani's failure to inform plaintiff of his test results. As explained below, the trial court correctly granted summary judgment as to each theory.

### 1. Direct liability based on breach of a judicially recognized duty to implement a test results notification system

Plaintiff asserts that Cedars breached a duty to ensure that its patients are notified of test results. However, *Walker v. Sonoma Regional Medical Center* (2012) 202 Cal.App.4th 948 (*Walker*) held that hospitals have no such duty.

In facts paralleling this case, Walker sued a hospital lab for not notifying her that her pregnancy test screening for cystic fibrosis carrier status came back positive. *Walker* held that the hospital's duty was to inform the *patient's doctor* of test results, not the patient himself or herself. (*Walker*, *supra*, 202 Cal.App.4th at p. 960.) This more limited duty, *Walker* reasoned, was more consistent with the constellation of federal and state laws proscribing disclosure of test results to anyone other than physicians and was more respectful of the doctor-patient relationship because the doctor (rather than the hospital or its lab) is in a better position to explain the meaning and significance of test results with the patient. (*Id.* at pp. 960-962.) Based on the same considerations, *Walker* also held that a hospital has no "adjunct" duty to ensure that physicians disclose to patients the test results that the hospital disclosed to the physicians. (*Id.* at pp. 966-967.) *Walker* forecloses this theory of liability.

Plaintiff says *Walker* is distinguishable. He asserts that Cedars, unlike the hospital in *Walker*, offered him more "comprehensive medical services" than Walker received. But the level of services provided by the hospital has no bearing on either of *Walker*'s rationales—namely, the confidentiality of test results or the better position of physicians to explain those results. Plaintiff further contends that, notwithstanding *Walker*, we may still impose a duty upon hospitals to disclose, in the discharge papers given to patients,

any test results or the fact that test results are pending. But this argument asks us to impose not only a duty upon hospitals to notify patients of test results, but to do so using a specific methodology. As such, this argument is even more inimical to *Walker*'s rationale than the duty urged upon the court in *Walker* itself.

Plaintiff alternatively seeks to sidestep the impact of *Walker*, arguing that Cedars breached its duty to pass along his HIV PCR test results to Dr. Payam Shadi, the doctor with whom plaintiff was to follow up after his discharge. This argument is not only inconsistent with the theory pled in the FAC; it is also inconsistent with the facts plaintiff pled—namely, that Cedars "broadcast[] [the positive] test results to [plaintiff's] attending, treating and consulting doctors and physicians." Plaintiff is not allowed to deny or to contradict the judicial admissions set forth in his operative pleading. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871.)

### 2. Direct liability based on negligence per se

Plaintiff alternatively argues that Cedars' noncompliance with two statutes (and accompanying regulations) required the trial court to presume that Cedars was negligent in not informing plaintiff (or in ensuring he was notified) of his test results. He cites Health and Safety Code (1) section 121022 and (2) section 121023. (Plaintiff also cites Health and Safety Code section 120990, which requires "medical care provider[s]" "or [other] person[s] who administer [an HIV] test" to ensure the patient who is tested "receives timely information and counseling, as appropriate, to explain the results and the implications for the patient's health" (*id.*, subd. (h)), but this section does "not apply to a clinical laboratory" (*id.*, subd. (i)), so provides no basis for liability against Cedars in this case.)

Health and Safety Code section 121022 obligates "health care providers and laboratories [to] report cases of HIV infection to the local [public] health officer." (*Id.*, subd. (a).) Section 121023 imposes a similar duty on "crime laborator[ies] . . . to report all CD4+ T-Cell test results to the local health officer." (*Id.*, subd. (a).)

Under the negligence per se doctrine, negligence is to be presumed from a defendant's violation of a statute that proximately results in injury as long as (1) the

11

statute "was designed to prevent" that type of injury, and (2) the injured plaintiff was "one of the class of persons for whose protection the statute . . . was adopted." (Evid. Code, § 669; *Johnson v. Honeywell Internat. Inc.* (2009) 179 Cal.App.4th 549, 555.) The two "legislative purpose" prerequisites are questions of law for the court. (*Daum v. Spinecare Medical Group* (1997) 52 Cal.App.4th 1285, 1306.)

Health and Safety Code sections 121022 and 121023 do not trigger the presumption of negligence as to plaintiff's claims against Cedars. By their plain language, these statutes impose a duty upon hospitals and labs to provide test results to "local health officers"—not to patients. Indeed, section 121022 explicitly sets forth its purpose: "To ensure knowledge of current trends in the HIV epidemic and to ensure that California remains competitive for federal HIV and AIDS funding." (*Id.*, subd. (a).) In sum, these statutes are not designed to prevent alleged notification lapses to the patient by the hospitals or labs that conduct HIV testing, and plaintiff is not among the class of persons they sought to benefit. Construing these statutes to support a presumption of negligence in this case would accordingly contravene their language and purpose, and would nullify *Walker* and its careful balance of competing policy interests.

For the first time in his reply brief on appeal, plaintiff argued that Health and Safety Code sections 121022 and 121023 create a basis for negligence per se when combined with section 120175 (former section 3110). Section 120175 obligates the local health officer to "take measures as may be necessary to prevent the spread of [a contagious, infectious, or communicable] disease or occurrence of additional cases." (Health & Saf. Code, § 120175.) Because this argument first appears in plaintiff's reply brief on appeal—and is absent from the FAC and his opposition to Cedars' summary judgment motion—plaintiff has forfeited this theory of liability. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.) This newly minted argument lacks merit in any event. Plaintiff notes that section 120175's predecessor, section 3110, has been read in conjunction with section 120250 (former section 3125) to state a claim by a patient against a hospital for its negligence in not reporting that patient's disease to the health officer. (*Derrick v. Ontario Community Hospital* (1975) 47 Cal.App.3d 145, 151-152

12

(*Derrick*).)  However, even *Derrick* acknowledged that section 120175 grants a health officer "discretion to determine the appropriate measures to be taken in a given case." (*AIDS Healthcare Foundation v. Los Angeles County Department of Public Health* (2011) 197 Cal.App.4th 693, 702; *Derrick*, at pp. 151-152.)  *Derrick* overruled the hospital's demurrer because the patient had alleged that the local health officer had been informing other patients of the communicable disease diagnoses it was receiving from hospitals; whether the health officer was *actually* doing so was "a problem of proof" not germane to the demurrer in that case.  (*Derrick*, at pp. 151-152.)  Here, we are reviewing a motion for summary judgment, but plaintiff has not adduced evidence that the health officer was exercising its discretion to tell the persons listed in reports submitted by hospitals under sections 121022 and 121023 of their test results.  Absent that proof, section 120175 does not aid plaintiff in his claim that Cedars' failure to report his test results to the local health officer injured *him*.

### 3.　Vicarious liability for Dr. Shirvani's failure to disclose

Plaintiff also seeks to hold Cedars liable vicariously for Dr. Shirvani's alleged negligence in not disclosing to him the HIV PCR test results Cedars disclosed to Dr. Shirvani.  "'[A]n employer is vicariously liable for his employee's torts committed within the scope of employment' '[u]nder the doctrine of respondeat superior . . .'"  (*Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1178.)  However, the only evidence in the record on Dr. Shirvani's employment relationship with Cedars is the "Conditions of Admission" form plaintiff signed and initialed when he was admitted to Cedars in 2007, and which in no uncertain terms states that "[a]ll physicians and surgeons furnishing services to the Patient . . . are independent contractors and are ***not*** employees or agents of the Hospital."  Given this undisputed fact, Dr. Shirvani was not Cedars' employee and Cedars was entitled to summary judgment on this theory.

13

In his reply brief, and on the basis of medical records in a contemporaneously filed motion to augment the record on appeal,[3] plaintiff argues that he "did not read" this form and was suffering from acute renal failure when it was signed. However, the records he points to for proof of his acute renal failure also indicate that he was "awake, responsive, [and] in no acute distress," and his failure to read the document is no excuse (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 93 ["the law effectively presumes that everyone who signs a contract has read it thoroughly . . ."]). More to the point, whether plaintiff signed the form is irrelevant because the form is proof of the nature of the employment relationship between Cedars and Dr. Shavrani; whether plaintiff *consented* to that relationship is irrelevant.

Given this undisputed proof that Dr. Shavrani was not Cedars' employee, Cedars was entitled to summary judgment on this theory.

### B.     Negligent credentialing

A hospital "owes a duty to [its] patient[s] of selecting and reviewing the competency of its staff physicians carefully," even if those physicians are independent contractors. (*Elam v. College Park Hospital* (1982) 132 Cal.App.3d 332, 340-341, 346.) In this case, however, the sole evidence plaintiff offers in support of Cedars' negligence in selecting and retaining Dr. Shirvani is Dr. Shirvani's mishandling of plaintiff's case. That does not create a triable issue of fact because liability for negligent hiring and supervision of employees or staff exists only if "'the employer *antecedently* had reason to believe that an undue risk of harm would exist because of the employment.'" (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1140, italics added.) It is not enough that "the one employed is incompetent, vicious, or careless." (*Ibid.*) Foreknowledge is

---

[3]     We will grant plaintiff's motion to augment the record except as to his June 21, 2013 deposition, which postdates the trial court's summary judgment ruling at issue in this appeal. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [summary judgment motions are evaluated on "the record that was before the trial court when it ruled on that motion"].) We deny plaintiff's request for judicial notice as it pertains to a matter referred to in the deposition because that matter becomes irrelevant in light of our refusal to augment the record with the deposition.

required, and plaintiff has produced no evidence that Cedars had any awareness—before this case—of Dr. Shirvani's alleged incompetence.

### C. *Constructive fraud/ fraudulent concealment*

Plaintiff's third claim against Cedars is for constructive fraud and fraudulent concealment. To establish a claim for constructive fraud, a plaintiff must prove "'(1) a fiduciary or confidential relationship; (2) *nondisclosure (breach of fiduciary duty)*; (3) intent to deceive; and (4) reliance and resulting injury (causation).'" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1131, quoting *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 516, fn. 14, italics added; Civ. Code, § 1573.) To establish a claim of fraudulent concealment, a plaintiff must show (1) that the defendant concealed or suppressed a material fact, (2) *that the defendant had a "duty to disclose" that fact to the plaintiff*, (3) that the defendant acted with the intent to defraud, (4) that the plaintiff was unaware of the concealed fact, and (5) that the plaintiff suffered injury as a result of the concealment. (*Stofer v. Shapell Indust., Inc.* (2015) 233 Cal.App.4th 176, 186, italics added.) As the italicized language indicates, these causes of action hinge on the duty of the defendant to disclose the concealed fact. Because, as we conclude above, Cedars has no duty to disclose test results to plaintiff, plaintiff's fraud-based claims necessarily fail as well.

### DISPOSITION

The judgment is affirmed. Cedars is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.

HOFFSTADT

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

15